CENTRAL VALLEY TYPOGRAPHICAL UNION, NO. 46 and International Typographical Union, Plaintiffs-Appellees,

v.

McCLATCHY NEWSPAPERS, Publisher of the Sacramento Bee, a California Corporation, Defendant-Appellant.

McCLATCHY NEWSPAPERS, Plaintiff-Appellant,

v.

CENTRAL VALLEY TYPOGRAPHICAL UNION NO. 46, International Typographical Union, Defendants-Appellees.

Nos. 84-1893, 84-2120.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 15, 1985.

Decided May 23, 1985.

Duane B. Beeson, Albert J. Kutchins, Beeson, Tayer & Silbert, San Francisco,

Cal., for Cent. Valley Typographical Union, No. 46 et al.

Allen W. Teagle, David S. Durham, Jeffrey M. Tannenbaum, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for McClatchy Newspapers.

Before BARNES and WALLACE, Circuit Judges, and GRAY,* District Judge.

WALLACE, Circuit Judge:

McClatchy Newspapers (the Publisher) appeals from a summary judgment in favor of the Central Valley Typographical Union No. 46 (the Union), in which the district court enforced an arbitration award in favor of the Union. The Publisher objected to the venue, to the denial of its motion to stay the confirmation action pending final action on an unfair labor practice proceeding before the National Labor Relations Board (the Board), and to the resolution of the case on its merits. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, vacate the judgment in part, and remand the case with instructions.

I

The dispute between these parties is before us for the second time. In *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731 (9th Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982) *(McClatchy I)*, we affirmed the district court's order confirming a 1979 arbitration award, in which the arbitrator ruled that the Publisher's employees had not forfeited a lifetime job guarantee by engaging in a sympathy strike. 686 F.2d at 733–34. However, we vacated an amended judgment that required the Publisher to reinstate the striking employees (the strikers), because a notice of appeal had been filed, thus divesting

the district court of jurisdiction. *Id.* at 734–35.

The underlying facts of this dispute already have been discussed in *McClatchy I* and need not be repeated here. *See id.* at 732–33. Following a complaint by the Union, the Board issued an unfair labor practice complaint against the Publisher on April 8, 1983, challenging the Publisher's failure to reinstate the strikers. On January 11, 1984, an Administrative Law Judge (ALJ) concluded that the contract between the Union and the Publisher (the Scanner Agreement) did not require reinstatement. The Union appealed this decision, and the case is pending now before the Board.

On August 29, 1983, the parties held an arbitration hearing in Sacramento on the issue of whether the failure to reinstate the strikers violated the Scanner Agreement. On February 6, 1984, less than one month *after* the decision by the ALJ, the arbitrator issued an opinion and award concluding that the Scanner Agreement required reinstatement and ordering reinstatement.

On February 8, 1984, the Publisher filed an action to vacate the arbitration award in the United States District Court for the Northern District of California. On February 23, the Union filed an action to confirm the arbitration award in the Eastern District of California, the district from which *McClatchy I* was appealed. The Union filed a motion in the Northern District to dismiss for improper venue or, alternatively, to transfer to the Eastern District which the Publisher opposed. On April 30, the Northern District court granted the Union's motion and transferred the Publisher's action to the Eastern District under 28 U.S.C. § 1406(a).

In the Eastern District, the Publisher moved to transfer both its action and the Union's action to the Northern District. The district court denied this motion. The parties also filed cross-motions for summary judgment. The district court granted the Union's motion for summary judgment

---

* Honorable William P. Gray, United States District Judge, Central District of California, sitting by designation.

and issued a stay pending appeal. Both actions were consolidated for appeal.

## II

Initially, we are faced with the question of whether the Publisher's action was properly transferred to the Eastern District of California under 28 U.S.C. § 1406(a), and whether that court properly refused to transfer both actions to the Northern District of California.

■ Under the clear language of the statute, transfers under section 1406(a) are proper only if the venue is improper in the transferor court. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67, 82 S.Ct. 913, 915–16, 8 L.Ed.2d 39 (1962); *Orion Shipping & Trading Co. v. United States*, 247 F.2d 755, 757 (9th Cir.1957). The Publisher argues that venue is proper in the Northern District under section 10 of the United States Arbitration Act of 1925 (the Arbitration Act), 9 U.S.C. § 10, which provides that "the United States court *in and for the district wherein the award was made* may make an order vacating the award," (emphasis added), because the arbitrator lives there, and because the award was written, mailed and served in the Northern District. Because the determination of this issue involves jurisdiction under the Arbitration Act, *see United States v. Ets-Hokin Corp.*, 397 F.2d 935, 938–39 (9th Cir.1968) *(Ets-Hokin)*, and there are no disputed facts involved, we review this determination de novo. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

We have declined previously to rule upon the applicability of the Arbitration Act to collective bargaining agreements. *See San Diego County District Council of Carpenters v. Cory*, 685 F.2d 1137, 1139 n. 4 (9th Cir.1982); *see, e.g., Retail Delivery Drivers, Driver Salesmen, Produce Workers & Helpers Local 588 v. Servomation Corp.*, 717 F.2d 475, 477–78 (9th Cir.1983). Once again, we need not reach this issue because even if the statute does apply to collective bargaining agreements, we conclude that

the award was not "made" in the Northern District as a matter of law. In *Ets-Hokin*, we decided that an Arizona district court was without jurisdiction to vacate an arbitration award because "[t]he arbitration ... was held, and the award was made by the arbitrators at San Francisco, California, and not in the District of Arizona." 397 F.2d at 938–39. The Publisher attempts to extrapolate from this language a general proposition that venue lies under section 10 wherever the arbitrator writes and mails the award. We disagree.

We interpret *Ets-Hokin* as placing primary reliance on where the arbitration was held. *See also City of Naples v. Prepakt Concrete Co.*, 490 F.2d 182, 184 (5th Cir.) (jurisdiction under the Arbitration Act is determined by where the hearing is held), *cert. denied*, 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974). The residence of the arbitrator, or the location at which he drafts the decision, or the place from which the decision is mailed cannot be determinative of venue. If they were, venue would be subject to fortuitous events that would eliminate all predictability for litigants. While in this case a drive from Sacramento to San Francisco might not be onerous, inequitable results could obtain in other cases. If an arbitrator from New York had been chosen to hold the proceeding in Sacramento, and then had written his decision while on vacation in Hawaii, and posted it from his home in New York, the Publisher's test would leave us at a loss to determine the proper venue. A rule laying venue where the arbitration is held, however, recognizes that the parties already have indicated that the location is mutually convenient to settle their dispute.

■ The Publisher also asserts that venue lies in the Northern District under 28 U.S.C. § 1391(b), as a district in which the claim arose, because the arbitration award that the Publisher seeks to vacate was written, mailed and served in that district. A claim arises "in any district in which a substantial part of the acts, events, or omissions occurred that gave rise to the claim for relief." *Sutain v. Shapiro &*

*Lieberman,* 678 F.2d 115, 117 (9th Cir. 1982) (per curiam) *(Sutain), quoting Commercial Lighting Products, Inc. v. United States District Court,* 537 F.2d 1078, 1080 (9th Cir.1976) *(Commercial Lighting)* (footnote omitted). Although venue is not equivalent to either personal or subject matter jurisdiction, *see Leroy v. Grast Western United Corp.,* 443 U.S. 173, 180, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464 (1979) *(Leroy),* and may often involve significant questions of fact, *e.g., Jennings v. McCall Corp.,* 320 F.2d 64, 67 (8th Cir.1963) (whether corporation is doing business within state for purposes of venue is a question of fact), the determination of where the claim arose for purposes of section 1391(b) on the basis of undisputed facts is a question of law reviewable de novo. *See, e.g., Leroy,* 443 U.S. at 185–87, 99 S.Ct. at 2717–19 (reviewing where claim arose de novo); *Sutain,* 678 F.2d at 117 (same); *Commercial Lighting,* 537 F.2d at 1080 (same). We conclude that the administrative acts of issuing the award alone cannot form "a substantial part of the acts" to which the Publisher objects as a matter of law. It objects to the merits underlying the arbitrator's award, and seeks vacation of the award as a remedy. The Publisher is not challenging the technical aspects of the award's issuance. Thus, we conclude that these aspects of the award, including service, do not constitute part of the claim and do not confer venue on the Northern District.

■ Similarly, section 301(c) of the Labor Management Relations Act, 1947, 29 U.S.C. § 185(c), does not establish venue in this case. The Publisher argues that since the Union retained counsel in San Francisco, "its duly authorized officers or agents are engaged in representing or acting for employee members" in the Northern District. This issue also involves jurisdiction. Although the question whether a person is an agent for purposes of section 301(c) may typically be one of fact, *see, e.g., Sherman v. American Federation of Musicians,* 588 F.2d 1313, 1314–15 (10th Cir.1978) (whether a person acted as an agent for union is a question of fact), *cert. denied,* 444 U.S. 825, 100 S.Ct. 46, 62 L.Ed.2d 31 (1979), a determination as to whether a union's attorney comes within the scope of the term agent for purposes of determining venue is a question of law reviewable de novo. *Cf. Barefoot v. International Brotherhood of Teamsters,* 424 F.2d 1001, 1004 (10th Cir.) (whether labor union's constitution established or negated a finding of an agency relationship for purposes of section 301(c) is a question of law), *cert. denied,* 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 257 (1970). Although the attorneys are agents of the Union, they are acting for the Union *qua* Union, not as representatives of the members in labor disputes with management. For reasons similar to those underlying our rejection of the Publisher's venue argument under the Arbitration Act, we reject this argument. "Agent" cannot have been meant to include counsel hired for litigation, or proper venue will depend on the entirely fortuitous choice of the Union's law firm. Thus, we conclude that the Union does not have an agent in the Northern District within the meaning of section 301(c).

■ Finally, the Publisher argues that the district court in the Northern District failed to provide it with adequate notice and an opportunity to be heard on the transfer issue in violation of its due process rights. The record reveals that notice was received by the Publisher one week before the hearing and it did not respond on the merits, but filed a written objection to consideration of the issue. The day before the hearing, the Publisher was invited to file its position on the merits of the transfer issue. The time was short, but not constitutionally inadequate. The Publisher's due process rights were not abridged.

■ We review both of the district courts' section 1406(a) rulings concerning whether either to dismiss or transfer an improperly filed case for an abuse of discretion. *See Cook v. Fox,* 537 F.2d 370, 371 (9th Cir.1976) (per curiam); *cf. CFTC v. Savage,* 611 F.2d 270, 279 (9th Cir.1979) (transfers under 28 U.S.C. § 1404(a) re-

viewed for an abuse of discretion). We conclude that the Northern District court did not abuse its discretion by transferring the Publisher's action to the Eastern District under 28 U.S.C. § 1406(a) because venue was improper in the Northern District, and that the Eastern District court similarly did not err by refusing to transfer the cases to the Northern District. In so holding, we do not reach the issue of whether transfer under 28 U.S.C. § 1404(a) also would have been proper.

### III

■ The Publisher requested a stay from the district court pending the final adjudication of the unfair labor practice action before the Board. The Publisher prevailed before the ALJ, and the Union appealed that decision to the Board. The Publisher argues that the arbitrator's and ALJ's interpretations of the Scanner Agreement are in direct conflict, and that since the Board's determination will be binding on the district court, the action should have been stayed pending the Board's decision. We review the district court's denial of the stay for an abuse of discretion. *See Northern California District Council of Hod Carriers v. Opinski*, 673 F.2d 1074, 1075–76 (9th Cir.1982) *(Opinski)*.

Although "[t]he Board is vested with primary jurisdiction to determine what is or is not an unfair labor practice," *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83, 102 S.Ct. 851, 859, 70 L.Ed.2d 833 (1982), the Board shares with the district court "concurrent jurisdiction over cases legitimately involving both unfair labor practice charges and

breach of collective bargaining agreement claims." *Toyota Landscape Co. v. Building Material & Dump Truck Drivers Local 420*, 726 F.2d 525, 527 (9th Cir.), *cert. denied*, — U.S. ——, 105 S.Ct. 104, 83 L.Ed.2d 49 (1984). *See Opinski*, 673 F.2d at 1075. The Scanner Agreement, although separately executed, was expressly incorporated by the parties into their collective bargaining agreement. Thus, the contractual provision at issue is part of a collective bargaining agreement over which the Board and the district court have concurrent jurisdiction.

The contractual provision in dispute in this case is section one of the Scanner Agreement, the job guarantee provision.[1] The ALJ interpreted this provision and found that the Publisher did not waive its rights to hire permanent strike replacements, and that the agreement therefore did not guarantee the reinstatement rights of the strikers. The ALJ concluded that the failure to reinstate the strikers was not an unfair labor practice. The ALJ also observed that the Publisher had committed no unfair labor practice by withdrawing recognition of the Union. The arbitrator, however, interpreted the same provision and determined that the Publisher was obligated to reinstate the strikers.

■ This is a case in which the contractual interpretation issue "is closely related to an unfair labor practice charge ... already presented to the NLRB, [thus requiring] the district court [to] exercise its discretion to determine whether [the] proceedings should be stayed until final disposition of the NLRB proceeding." *Opinski*, 673 F.2d at 1075. In such cases, a stay often

---

1. Section one of the Scanner Agreement provides:

> 1. The Sacramento Newspaper Publishers Association, hereinafter referred to as the 'Publishers' agree that all of its composing room employees whose names appear on the attached lists will be retained in the employment of the Publishers in accordance with accepted rules governing situation holders for the remainder of their working lives unless forced to vacate same through retirement, resignation, death, permanent disability, or discharge for cause; provided, however, in the

event of permanent suspension of either Publisher's composing room operation, such employment guarantee will thereupon cease. In case of a strike or lockout, such employment guarantee shall immediately cease and continuance of this Agreement will be contingent upon the terms of a negotiated strike or lockout settlement; and provided further in the event of an 'Act of God' which results in a period of suspension of either Publisher's composing room operation, the job guarantee will be suspended for such period only.

will be required. *See id.* The district court is not necessarily precluded from denying a stay, however, even if a potential conflict is presented. *See Orange Belt District Council of Painters No. 48 v. Maloney Specialties, Inc.,* 639 F.2d 487, 489–90 (9th Cir.1980) *(Orange Belt).*

If the district court had issued a stay, it would not have abused its discretion. *See, e.g., Opinski,* 673 F.2d at 1076; *United Association of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry v. Foley,* 380 F.2d 474, 476 (9th Cir.1967) (per curiam) (stay affirmed under abuse of discretion standard when Board and district court faced "some of the same issues"). We cannot reverse the denial of the stay by the district court, however, unless we have a definite and firm conviction that the district court committed an error after considering the relevant factors. *See Potlatch Corp. v. United States,* 679 F.2d 153, 157 (9th Cir.1982).

■ The Publisher concedes that the primary jurisdiction of the Board extends only to cases involving representational issues. *See, e.g., Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964) *(Carey); Cannery Warehousemen, Food Processors, Drivers & Helpers for Teamsters Local Union # 748 v. Haig Berberian, Inc.,* 623 F.2d 77, 81–82 (9th Cir.1980) *(Berberian); see also Carpenters' Local Union No. 1478 v. Stevens,* 743 F.2d 1271, 1278–79 & n. 11 (9th Cir. 1984) (reading *Carey* and *Berberian* to apply only in representational cases), *cert. denied,* ___ U.S. ___, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985); *cf. American Commercial Barge Lines Co. v. Seafarers International Union,* 730 F.2d 327, 337–39 (5th Cir. 1984) (deference to the Board is appropriate in representational cases) *(Seafarers).* There remains, however, a "critical distinction" between representational issues and general contractual issues presented by collective bargaining agreements. *Jim McNeff, Inc. v. Todd,* 461 U.S. 260, 267, 103 S.Ct. 1753, 1757, 75 L.Ed.2d 830 (1983). Although the Board and arbitrators have concurrent jurisdiction over both types of cases, the Board's final decision takes precedence over an inconsistent arbitration award only when the dispute involves representational issues. *See Berberian,* 623 F.2d at 81–82.

In this case, the ALJ decided two issues: (1) whether the Publisher waived its statutory right to hire permanent strike replacements in section one of the Scanner Agreement; and (2) whether the Publisher properly withdrew its recognition of the Union as the bargaining representative. After concluding that the contract did not require reinstatement, the ALJ found that this fact forced the conclusion that withdrawal of recognition was permissible because the unreinstated strikers could not be considered in determining majority status.

The arbitrator was faced only with the initial issue of contract interpretation, and he concluded that the Scanner Agreement required reinstatement. These decisions clearly present opposing and conflicting interpretations of the Scanner Agreement, and the Union concedes as much. The Union argues, however, that the contractual interpretation issue is separate and distinct from the representational issue and unfair labor practice issues, and thus falls outside the scope of the Board's primary jurisdiction.

We disagree. The interpretation of this contractual provision is a question of fact. *CBS, Inc. v. Merrick,* 716 F.2d 1292, 1295 (9th Cir.1983). This factual determination appears to have been essential to the ALJ's finding of no unfair labor practice on the representational issue, as the ALJ expressly referred to his result as "contingent" on this finding. Thus, we conclude that the contract interpretation issue may be inextricably bound up with the representational issue in this case.

■ The close relationship between the contract interpretation issue and the representational issue raises another relevant factor—whether the Board's eventual resolution of this issue will be issue preclusive on the contract. "A determination of fact by the National Labor Relations Board will be accorded collateral estoppel effect if it is made in a proceeding fully complying with

procedural and substantive due process, and if the findings are upon material issues supported by substantial evidence." *Glaziers & Glassworkers Local Union #767 v. Custom Auto Glass Distributors*, 689 F.2d 1339, 1341 (9th Cir.1982). Although the ALJ's determination of the issue has no collateral estoppel effect, the Board's decision on this issue, if it follows the ALJ, will be preclusive if it comports with due process and if the factual finding is necessary to its determination of the unfair labor practice issue. *See id.* When considering a motion to stay pending final Board action, a district court need not resolve these issues conclusively since the final determination of collateral estoppel turns on the Board proceeding. The district court, however, must consider whether the ALJ's decision, if adopted, presents a likelihood of preclusion.

The facts of this case are somewhat unusual and present a particularly compelling case for preclusion if the Board follows the ALJ's decision. We often see an administrative hearing occurring subsequent to an arbitration. *E.g., Berberian*, 623 F.2d at 78–79. In such cases, the Board is likely to defer to the arbitrator's findings. *See Olin Corp.*, 268 N.L.R.B. 573, 574 (1984). *See also Bakery, Confectionery & Tobacco Workers International Union 25 v. NLRB*, 730 F.2d 812, 814–16 (D.C.Cir.1984) (recognizing Board's policy of deference); *cf. Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 743 n. 22, 101 S.Ct. 1437, 1446 n. 22, 67 L.Ed.2d 641 (1981) (discussing weight given to arbitrator's findings in subsequent Title VII suit on a collective bargaining agreement), *quoting Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 n. 21, 94 S.Ct. 1011, 1025 n. 21, 39 L.Ed.2d 147 (1974). The opposite occurred here: the administrative proceeding preceded arbitration.

The Union filed its unfair labor practice action in 1979, and the Board issued its complaint on April 8, 1983. The ALJ tried the case on August 8, 1983, prior to the arbitration proceeding which occurred on August 29. The ALJ issued his decision on January 11, 1984, prior to the arbitrator's

decision on February 6, 1984. Therefore, the ALJ's decision was initiated, heard and decided prior to the corresponding stages in the arbitration. Moreover, the ALJ expressly stated that his interpretation of the contract was essential to the resolution of the unfair labor practice issues. Thus, it is far from clear that the Board will defer to the arbitrator's findings on this issue instead of adopting the ALJ's findings. The ALJ's prior factual findings should have been considered by the district court to evaluate the likelihood of preclusion.

■ In addition, the equities presented by this factor weigh heavily in favor of a stay. It was the Union, not the Publisher, that initiated the unfair labor practice proceedings. Moreover, prior to the administrative hearing, the Publisher requested the ALJ to defer to the upcoming arbitration. The Union opposed this deferral, and urged the ALJ to hear the case. Now, the Union seeks to disavow the adverse decision it requested by arguing that a stay is inappropriate. Such a change of position is not favored by equitable principles. It is true that, to some extent, the same might be said of the Publisher who is now seeking to vacate an award to which it consented, but there is one crucial distinction. By initiating the unfair labor practice proceeding with the Board, the Union placed the Publisher into a position that forced it to become a respondent in the labor tribunal. The Publisher did not force the Union to arbitrate.

Our review of the record reveals that the district court failed to consider these relevant and important factors. The district court based its denial of the Publisher's motion solely on the basis of its perceived discretion. The district court did not consider whether and to what extent the contractual interpretation issue presented to the ALJ was bound up with the determination of a representational issue. Indeed, it failed to consider whether this case was within the scope of the Board's primary jurisdiction, at least to the extent interpreted by the ALJ. The district court observed

only that the issue was within its concurrent jurisdiction and it therefore had discretion to deny the stay. Although correct, this is insufficient. Under the circumstances, the district court's failure to consider the relevant factors implicated by the Publisher's motion to stay pending final Board action was a failure to exercise its discretion, and hence an abuse of that discretion. *See, e.g., Sargeant v. Sharp,* 579 F.2d 645, 647 (1st Cir.1978). We therefore vacate the order denying the stay and remand the case to the district court for consideration of these relevant factors and any others properly weighing on the exercise of its discretion.

The district court will need to determine whether the ALJ's contractual interpretation was an essential part of its adjudicative process on a representational issue within its primary jurisdiction, and therefore whether it must be considered as within the primary jurisdiction of the Board in this case, at least until the Board rules otherwise. If so, the district court must consider whether both the district court and the ALJ have been presented not with a purely contractual issue, but with an issue raising national labor policy questions. *Cf. George Day Construction Co. v. United Brotherhood of Carpenters & Joiners of America,* 722 F.2d 1471, 1481 (9th Cir.1984) (purely contractual issues do not invoke the Board's primary jurisdiction).

Although it is true that the resolution of an unfair labor practice dispute before the Board does not necessarily preclude enforcement of contractual obligations in the district courts, *see, e.g., Smith v. Evening News Association,* 371 U.S. 195, 197–98, 83 S.Ct. 267, 268–69, 9 L.Ed.2d 246 (1962), two logically inconsistent judgments cannot both be enforced when a representational issue is at stake. *See, e.g., Teamsters Union Local No. 115 v. DeSoto, Inc.,* 725 F.2d 931, 937 (3d Cir.1984); *Orange Belt,* 639 F.2d at 489 n. 2. *See also Hospital & Institutional Workers Union Local 250 v. Marshal Hale Memorial Hospital,* 647 F.2d 38, 41 (9th Cir.1981) (decisions that present no logical inconsistency may be enforced) (*Marshal Hale*). Therefore, if these two decisions present conflicting interpretations of the same material contractual provision, and the representational issue was within the primary jurisdiction of the Board under the facts of this case, the district court will need to decide if a final Board decision adopting the ALJ's opinion would take precedence over the arbitrator's decision to the extent that the two are in conflict.

This determination is important because the strongest cases for a stay are presented when the Board's primary jurisdiction is involved. Although we recognize that the parties in this case consented to arbitration, and we are not unmindful of the strong policies favoring arbitration as an alternative dispute resolution technique uniquely suited to labor disputes, *see, e.g., Carey,* 375 U.S. at 265–66, 84 S.Ct. at 405–06, the existence of these policies is not outcome determinative. In *Berberian,* for example, we concluded that a Board representation order overrode a conflicting arbitration award on whether a new site was part of an existing bargaining unit. 623 F.2d at 81–82 & n. 5. We pointed out that deference to the Board's decision was warranted because the Board must take a "broader view," and consider not only the agreement before it, but the effect of its decision on all parties in light of the policies surrounding representation. *Id.* at 82. In contrast, we observed that "arbitrators are more limited in their focus.... '[Their] function is to discern the intention of the parties to a contract, who have hired [them] to resolve their differences. The interests of third parties, such as an individual employee, a group of employees or the public, are not [their] primary concern.'" *Id., quoting NLRB v. Horn & Hardart Co.,* 439 F.2d 674, 678 (2d Cir. 1971).

In summary, the district court will need to consider, at a minimum, the following questions: Was the interpretation of the Scanner Agreement inextricably linked to a representational matter within the Board's primary jurisdiction as interpreted by the

ALJ? Might an eventual Board decision on this material, factual issue be issue preclusive in the district court? Have both the arbitrator and the ALJ ruled on this issue in a way presenting the district court with something more than a potential conflict? *See, e.g., Marshal Hale,* 647 F.2d at 42 (existence of a conflict between the Board and arbitrator is speculative when the arbitrator has not yet ruled). Have both the arbitrator and the ALJ rendered inconsistent decisions on a material issue? *Cf. Orange Belt,* 639 F.2d at 489 n. 2 (exercise of discretion to deny a stay upheld when ALJ and arbitrator in conflict only on an immaterial issue). Will granting a stay preserve the status quo?

We express no view on whether the stay should be granted, but allow the district judge to exercise his discretion in the first instance, weighing the relevant factors necessary for his decision.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.