MOTION PICTURE LABORATORY
TECHNICIANS LOCAL 780,
I.A.T.S.E., Plaintiff-Appellee,

v.

McGREGOR & WERNER, INC.,
Defendant-Appellant.

No. 72, Docket 86–7371.

United States Court of Appeals,
Second Circuit.

Argued Sept. 19, 1986.

Decided Oct. 22, 1986.

Bernard M. Mamet, Chicago, Ill. (Paul T. Berkowitz, Colleen M. Reid, Bernard M. Mamet & Associates, Ltd., Chicago, Ill., Delson & Gordon, New York City, of counsel), for plaintiff-appellee.

Donald T. Ryce, Jr., Coral Gables, Fla. (Jesse S. Hogg, Allen J. McKenna, Hogg, Allen, Ryce, Norton & Blue, P.A., Coral Gables, Fla., Nathan J. Bayer, Kevin J. Keelan, Freehill, Hogan & Mahar, New York City, of counsel), for defendant-appellant.

Before LUMBARD, OAKES and MINER, Circuit Judges.

LUMBARD, Circuit Judge:

The district court for the Southern District of New York (Carter, J.) upheld the results of an arbitration between McGregor & Werner ("the company" or "M & W") and the Motion Picture Laboratory Technicians ("the union" or "Local 780"). M & W challenges the district court's ruling on venue and its holding on the merits of the arbitration. The company and union jointly submitted a dispute to arbitration. The arbitrator ruled in favor of the union. The company moved, under the United States Arbitration Act, 9 U.S.C. §§ 9 and 13 (1982), in the United States District Court for the Middle District of Florida, to have the arbitration ruling set aside. The union then filed suit in the Southern District,

under the same statute, to have the arbitrator's decision confirmed. The company moved to dismiss the New York action, on the ground, *inter alia*, that venue did not lie in the Southern District of New York. The district court denied the motion, and after full briefing by both sides, confirmed the arbitrator's award. The company appeals on two grounds. First, it asserts that the district court improperly held that it had jurisdiction over the case; second, it claims that the arbitrator's award was clearly erroneous and thus should not have been enforced. We agree with appellant that venue was not proper in the Southern District of New York, and reverse the judgment of the district court with instructions to dismiss the complaint.

## I.

For more than twenty years, McGregor & Werner had a contract with the National Aeronautics and Space Administration ("NASA") to provide printing, micrographic and related services to NASA at the Kennedy Space Center in Cape Canaveral, Florida, which is part of the Middle District of Florida. Throughout these years Local 780 represented the company's employees in a series of contracts with the company. NASA periodically allowed new competitors to bid on projects, and, as a consequence, long-established employers sometimes lost contracts. It was customary at NASA for the new employers to hire many of the former employers' workers. NASA for a long time insisted that the "old" employers pay severance pay to their workers who were hired by the "new" employers. The employers objected to this practice, and modified it in collective bargaining agreements. The contract between Local 780 and McGregor & Werner contained such a modification, which provided that a "picked up" employee would not receive severance pay "in the event of employment with a follow-on (replacement) contractor (employer) where there is a continuity of employment and when prior length of service (seniority rights) is preserved under substantially equal conditions of employment." In other words, if a new employer

picked up the contracts of Local 780 members and paid them the same wages and benefits for doing the same jobs, the workers would not be entitled to receive severance pay.

On January 1, 1983, M & W lost its contract with NASA when NASA awarded the contract to a company called EG & G. EG & G, in turn, subcontracted the same work back to M & W. On July 1, 1983, EG & G terminated its subcontract with M & W and took the work in-house. EG & G rehired many of the M & W workers, albeit under different terms of employment than under their former contract.

Local 780 then filed a grievance against M & W to obtain a judgment guaranteeing its members severance pay under the terms of their contract. The argument was that the employees were in genuinely new jobs—that is, there had been no "pick up" —so M & W as the "old" employer was required to give severance pay. The arbitrator held five days of hearings in January and March of 1984, in Cocoa Beach, Florida, which is in the Middle District of Florida. The arbitrator, in a decision mailed from New York on September 25, 1984, sustained the grievance and ordered M & W to give the workers severance pay.

Following the arbitrator's decision to award severance pay, the company on December 21, 1984 filed suit in the Middle District of Florida seeking to vacate the arbitration award. On March 8, 1985, the union filed its complaint in the Southern District, seeking to enforce the award. On October 21, 1985, Judge Carter issued an order finding that the Southern District had jurisdiction over the matter and, on December 17, 1985, he confirmed the arbitration award. On January 8, 1986, Judge Sharp in the Middle District of Florida, on the basis of Judge Carter's decision, dismissed the Florida case without prejudice. Judge Sharp's decision is now on appeal in the United States Court of Appeals for the Eleventh Circuit. The company now appeals both of Judge Carter's rulings to this Court.

## II.

■ Section 9 of the Arbitration Act states: "If the parties in their [arbitration] agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court ... any party to the arbitration may apply to the court so specified for an order confirming the award[.]" The parties here did not specify the court for review of the arbitration. Section 9 provides for such circumstances by stating that if "no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9 (1982).

The union's argument is straightforward. The arbitrator's decision was undeniably signed, sealed and mailed from New York. Thus, the union argues, it was "made" in New York, and their application in the Southern District was proper.

In response, the company points out that every significant act in this case—from the site of the dispute to the location of the arbitration hearings—took place in the Middle District of Florida. The only act that took place in New York was the signing and mailing of the arbitrator's award—a purely "ministerial" action which should be of no consequence to the jurisdictional decision. The decision was, they assert, in every relevant respect "made" in Florida.

A recent decision in the Court of Appeals for the Ninth Circuit points squarely in the appellant's favor. *Central Valley Typographical Union, No. 46 v. McClatchy Newspapers,* 762 F.2d 741 (9th Cir.1985), involved a union's attempt to confirm an arbitration award in the Eastern District of California, where the arbitrator had written and mailed his decision; the underlying arbitration hearing had been conducted in the Northern District of California. The Court held that venue was proper in the Northern District, stating that "The resi-

dence of the arbitrator, or the location at which he drafts the decision, or the place from which the decision is mailed cannot be determinative of venue. If they were, venue would be subject to fortuitous events that would eliminate all predictability for litigants.... If an arbitrator from New York had been chosen to hold the proceeding in Sacramento, and then had written his decision while on vacation in Hawaii and posted it from his home in New York, the [proposed] test would leave us at a loss to determine the proper venue. A rule laying venue where the arbitration is held ... recognizes that the parties already have indicated that the location is mutually convenient to settle their dispute." *Id.* at 744. We agree.

Unless the courts recognize a clear rule about laying venue where the arbitration is held, venue would be left simply to the serendipity of the arbitrator's choice of the place where he will sign and mail his decision. The overall Congressional purpose of ensuring uniformity in arbitrations would scarcely be served by such a result. *Cf.* 1947 U.S. Code Cong. & Ad. News 1515 (discussing purpose of Arbitration Act). We do not believe the statute commands otherwise. The law states that jurisdiction belongs in the district "within which such award was *made.*" 9 U.S.C. § 9 (1982) (emphasis added). The Act does not state that jurisdiction belongs where the award was "written" or "filed." The location of the instant dispute was in Florida, the parties operate out of Florida, and the repercussions of the arbitrator's decision will be felt exclusively in Florida; we thus hold, for the purpose of venue, that the award was "made" in Florida.[1]

■ Our holding that venue was proper in the Middle District of Florida does not necessarily compel the conclusion that venue was improper in the Southern District of New York. As we recently held, the "venue provision of section 9 [of the Arbitration

---

**1.** The cases relied on by appellees are inapposite. Both *Island Creek Coal Sales Co. v. City of Gainesville,* 729 F.2d 1046, 1050 (6th Cir.1984), and *City of Naples v. Prepakt Concrete Co.,* 490

F.2d 182, 183 (5th Cir.), *cert. denied,* 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974), involved venue disputes where the arbitration *and* the awards were filed in the same district.

Act] should be read as permissive rather than exclusive." *Smiga v. Dean Witter Reynolds, Inc.,* 766 F.2d 698, 706 (2d Cir. 1985), *cert. denied,* — U.S. —, 106 S.Ct. 1381, 89 L.Ed.2d 607 (1986). However, when the union filed suit in New York, the essentially identical action was already underway in Florida. "[W]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second." *Fort Howard Paper Co. v. William D. Witter, Inc.,* 787 F.2d 784, 790 (2d Cir.1986) (citations omitted). First, the balance of convenience in this matter weighs overwhelmingly in favor of the Florida action, as the parties here have absolutely no ties to the Southern District of New York. Second, the chief "special circumstance" we have noted is our interest in discouraging forum shopping. *See, e.g., William Gluckin & Co. v. Int'l Playtex Corp.,* 407 F.2d 177, 178 (2d Cir.1969); *Horn & Hardart Co. v. Burger King Corp.,* 476 F.Supp. 1058, 1061 (S.D.N.Y.1979); *Columbia Pictures Industries, Inc. v. Schneider,* 435 F.Supp. 742, 746–47 (S.D.N.Y.1977), *aff'd mem.,* 573 F.2d 1288 (2d Cir.1978). Appellee's journey north in this matter to assert a tenuous claim of venue in another jurisdiction certainly does not favor our ignoring the well-settled first filed rule.

### III.

The judgment of the district court is reversed, with instructions to dismiss the complaint.