In the Matter of the ARBITRATION BETWEEN GRIFFIN INDUSTRIES, INC. and Ocean Logistics Corporation, as Charterers, Petitioner,

and

**PETROJAM, LTD. as owner of the M/V Petrojam Trader, Respondent.**

No. 99–Civ. 1806(RWS).

United States District Court, S.D. New York.

July 21, 1999.

Snow Becker Krauss, New York City, by Michael O. Hardison, of counsel, Ransom Law Offices, New Orleans, LA, by William A. Ransom, III, of counsel, for petitioner.

Watson, Farley & Williams, New York City, by John G. Kissane, of counsel, McAlpin & Brais, Miami, FL, by Richard J. McAlpin, of counsel, for respondent.

## OPINION

SWEET, District Judge.

Petitioners Griffin Industries, Inc. ("Griffin") and Ocean Logistics Corp. ("OCL" and collectively, "Petitioners") have moved to vacate, or in the alternative, to modify the arbitration awards dated December 14, 1998 and December 22, 1998, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 10, 11 (the "FAA"). Respondent Petrojam, Ltd. ("Petrojam") has cross moved to: (1) confirm the arbitration awards pursuant to section 9 of the FAA, 9 U.S.C. § 9, and (2) to transfer this action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).

For the reasons set forth below, Petrojam's motion to transfer is denied, Petitioners' motion to vacate or modify the arbitration awards is denied, and Petrojam's motion to confirm the arbitration awards is granted.

### The Parties

Griffin is a United States corporation with an office and principal place of business located at 4221 Alexandria Pike, Cold Spring, Kentucky 41076.

OCL is a United States corporation with an office and principal place of business located at Suite 301, 3636 South I–10 Service Road West, Metarie, Louisiana 70001.

Petrojam is a Jamaican corporation with an office and principal place of business located at 96 Marcus Garvey Drive, Kingston, Jamaica.

### Background

During early 1997, Petitioners and Petrojam entered into two charter party agreements (the "Agreements"). The Agreements contained identical arbitration clauses which provided for arbitration of any disputes under the Agreements in the City of New York (the "Arbitration Clause").

Disputes arose between Petitioners and Petrojam and the parties agreed to resolve these disputes by consolidated arbitration in the City of New York. Petitioners appointed their arbitrator from the Roster of Members of the Society of Maritime Arbitrators, Inc. ("SMA"), Petrojam appointed its arbitrator from the SMA, and the two so selected chose a third arbitrator and procedural chairman from the SMA. Petrojam submitted its initial documentation to the arbitrators on or about September 25, 1997. After several delays, Petitioners submitted their initial submissions on January 23, 1998.

According to Petitioners, the parties contemplated and expected that the arbitrators would conduct a hearing or hearings "in as much as several issues could only be addressed through the oral testimony and cross-examination of witnesses." (Petition at ¶ 11). Petrojam asserts that with respect to oral hearings it had pro-

posed that "[d]epending on the argument presented, it may be possible to rest on the written submissions, and avoid an oral hearing." (McAlpin Aff.Exh. A). Petrojam avers that since Petitioners did not submit any opposition to the procedures proposed by Petrojam, the arbitrators, noting no objection by Petitioners, adopted Petrojam's proposal on February 13, 1998.

On April 20, 1998, as Petitioners had failed to timely submit their response brief, Petrojam requested that the arbitrators rule based on the documents submitted to date. The arbitrators promptly sent a letter to Petitioners indicating that they were prepared to rule:

> We were expecting your response to the owner's argument by April 10, 1998. Kindly advise the panel of your status as we are prepared to act on the information received to date. Your prompt cooperation would be appreciated.

Petitioners subsequently submitted their reply brief. According to Petrojam, Petitioners made no mention of or request for oral hearings at this time.

On December 14 and 22, 1998, the arbitrators issued final arbitration awards awarding Petrojam damages against the Petitioners. On January 12, 1999, Petrojam filed a petition to confirm the arbitration awards in the United States District for the Southern District of Florida. *See In the Matter of the Arbitration Between Petro Jamaica and Griffin Industries, Inc., and Ocean Logistics Corp.,* Civ–Moreno, 99–0066. On March 9, 1999, Petitioners appeared and filed an answer in the confirmation action in the Southern District of Florida.

On March 11, 1999, Petitioners filed the instant action to vacate or modify the arbitration awards in the Southern District of New York. On April 2, Petrojam filed its cross motion to confirm the awards, and filed its motion to transfer this action to the Southern District of Florida. Oral argument was heard on April 21, 1999, at which time the motions were deemed fully submitted.

By order dated June 30, 1999, the Honorable Federico A. Moreno granted Petitioners' motion to stay the action in the Southern District of Florida pending this Court's adjudication of the instant motions.

### Discussion

#### I. *Petrojam's Motion to Transfer Will Be Denied*

Petrojam asserts that this action should be transferred to the United States District Court for the Southern District of Florida on the ground that there is a first-filed action to confirm the awards pending there. The Court has the authority, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the Southern District of Florida. Section 1404(a) provides that:

> for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). This section is a statutory recognition of the common law doctrine of *forum non conveniens* as a facet of venue in the federal courts. *See Wilshire Credit Corp. v. Barrett Capital Management Corp.,* 976 F.Supp. 174, 180 (W.D.N.Y.1997). Section 1404(a) strives to prevent waste " 'of time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " *Wilshire,* 976 F.Supp. at 180 (*quoting Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)).

" '[M]otions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness on a case-by-case basis.' " *Linzer v. EMI Blackwood Music Inc.,* 904 F.Supp. 207, 216 (S.D.N.Y.1995) (*quoting In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d cir.1992)) (*citing Stewart Org. Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). The burden of demonstrating the desirability of transfer lies with the moving party.

In determining whether transfer is warranted "for the convenience of the parties and witnesses [and] in the interest of justice" under § 1404(a), courts generally consider several factors. The factors to be considered in the instant case include (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances. *See Orb Factory, Ltd. v. Design Science Toys, Ltd.,* 6 F.Supp.2d 203 (S.D.N.Y.1998) *(citing Wilshire,* 976 F.Supp. at 181); *see also Constitution Reinsurance Corp. v. Stonewall Ins. Co.,* 872 F.Supp. 1247, 1250 (S.D.N.Y.1995); *Cento Group, S.p.A v. OroAmerica, Inc.,* 822 F.Supp. 1058, 1060 (S.D.N.Y.1993).

The general rule in the Second Circuit is that "as a principle of sound judicial administration, the first suit should have priority, 'absent the showing of balance of convenience in favor of the second action.'" *Capitol Records, Inc. v. Optical Recording Corp.,* 810 F.Supp. 1350, 1353 (S.D.N.Y.1992) *(quoting Remington Prods. Corp. v. American Aerovap, Inc.,* 192 F.2d 872, 873 (2d Cir.1951)). As this Court has held, however, the first-filed doctrine "does not supersede the inquiry into the balance of convenience required under § 1404." *River Road Int'l, L.P. v. Josephthal Lyon & Ross Inc.,* 871 F.Supp. 210, 214–15 (S.D.N.Y.1995) *(citing Rolls–Royce Mo-*

*tors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040, 1061 (S.D.N.Y.1987)).

Special circumstances may warrant an exception to the first-filed doctrine. *See William Gluckin & Co. v. International Playtex Corp.,* 407 F.2d 177, 178 (2d Cir. 1969). The Supreme Court has endorsed this case-specific approach, and has held that "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems." *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952). Petitioners contend that special circumstances dictate that this Court should hear their motion to vacate or modify the arbitration awards. Specifically, Petitioners assert that a transfer to Florida could abrogate their right to move to vacate the arbitration awards.

There is, as Petitioners note, a split among the appellate courts as to whether the venue provisions of sections 9, 10 and 11 of the FAA are exclusive or permissive.[1] The Sixth and Ninth Circuits have held that the venue provisions are mandatory, requiring that motions to confirm or vacate arbitration awards be brought in the district where the award was made. *See, e.g., Island Creek Coal Sales Co. v. Gainesville,* 729 F.2d 1046 (6th Cir.1984); *Sunshine Beauty Supplies, Inc. v. United States District Court for the Central District of California,* 872 F.2d 310 (9th Cir.1989). A majority of the circuits, including the Second Circuit, have held that venue is permissive. *See, e.g., Motion Picture Laboratory Technicians Local 780 v. McGregor & Werner, Inc.,* 804 F.2d 16 (2d Cir.1986); *Smiga v. Dean Witter Reynolds, Inc.,* 766 F.2d 698 (2d Cir.1985); *Apex Plumbing*

---

1. Section 9 of the FAA states that confirmation of an arbitration award "may be made to the United States court in and for the district within which such an award was made." 9 U.S.C. § 9. Section 10 provides, in pertinent part, "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration...." 9 U.S.C. § 10 Section 11 provides, in pertinent part, "the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration...." 9 U.S.C. § 11.

*Supply, Inc. v. United States Supply Co.,* 142 F.3d 188 (4th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 178, 142 L.Ed.2d 145 (1998); *Sutter Corp. v. P & P Indus., Inc.,* 125 F.3d 914 (5th Cir.1997); *In re VMS Securities Litigation,* 21 F.3d 139 (7th Cir. 1994). Under this interpretation, an action to confirm or vacate may be brought in the district in which the award was made, but it is not required. Thus, "[o]nce a federal court has subject matter jurisdiction over an action, it may confirm an arbitration award even though it was not the district where the award was made." *Smiga,* 766 F.2d at 706.[2]

The Petitioners submit that the Eleventh Circuit has not yet determined whether it will apply a permissive or an exclusive interpretation to section 9, 10 and 11 of the FAA. Petitioners cite *Baltin v. Alaron Trading Corp.,* 128 F.3d 1466 (11th Cir.1997), in support of their assertion that "the Eleventh Circuit expressly left open the possibility that it might determine the exclusive construction to be the correct construction." (Petitioners' Brief at 4). Consequently, Petitioners urge that they run the risk of being deprived of their remedies under the FAA.[3] Even assuming that the issue of whether the venue provision of sections 9 and 10 of the FAA are permissive or exclusive will be presented to the Eleventh Circuit during the pendency of the confirmation action in Florida, nothing in the *Baltin* decision suggests that the Eleventh Circuit will adopt an exclusive construction. The Eleventh Circuit in *Baltin* stated only that because the district court did not have subject matter jurisdiction, the issue of

venue need not be reached. *See* 128 F.3d at 1468 n. 4.

Petitioners further postulate that because Florida was formerly part of the Fifth Circuit, and because the Fifth Circuit formerly adopted an exclusive construction, *see City of Naples v. Prepakt Concrete Company,* 490 F.2d 182 (5th Cir. 1974), the Eleventh Circuit might follow suit. However, Petitioners do not, and cannot state with any certainty that the Eleventh Circuit will follow the Fifth Circuit. Moreover, if the Eleventh Circuit does choose to adhere to the construction adopted by the Fifth Circuit, it seems at least equally plausible that it would follow the current state of the law in the Fifth Circuit which allows for a permissive construction. *See Sutter Corp. v. P & P Indus., Inc.,* 125 F.3d 914 (5th Cir.1997). Finally, the only case cited by the parties from the Southern District of Florida, *Dombrowski v. Swiftships, Inc.,* 864 F.Supp. 1242 (S.D.Fla.1994), adopted a permissive construction of the venue provisions of the FAA. Petitioners' speculation as to what the law might become does not constitute a special circumstance warranting an exception to the first-filed doctrine.

According to Petitioners, Petrojam's choice to file in the Southern District of Florida "gives off the unmistakable aroma of forum shopping." (Petitioners' Brief at 11). Forum shopping by a party in the first-filed action is included among the special circumstances that have been held to warrant exception to the first-filed rule. *See Riviera Trading Corporation v. Oakley, Inc.,* 944 F.Supp. 1150, 1158 (S.D.N.Y. 1996) (*citing Rayco Mfg. Co. v. Chicopee*

---

**2.** The Second Circuit has not explicitly stated whether a district court outside the district where an arbitration was made has jurisdiction over a suit to vacate or modify the award pursuant to §§ 10 and 11. A number of courts in this district, however, in reliance upon the Second Circuit's finding that a motion to vacate is an "essentially identical action" to a motion to confirm, *Motion Picture Laboratory,* 804 F.2d at 19, have adopted a permissive interpretation of the venue provisions of sections 10 and 11. *See Alexander*

*Ins. Ltd. v. Executive Life Ins. Co.,* 1991 WL 150224 at *3 n. 4; *Concourse Beauty Sch., Inc. v. Polakov,* 685 F.Supp. 1311, 1315 (S.D.N.Y.1988).

**3.** Pursuant to 9 U.S.C. § 12, Petitioners have only three months after the award was made to move to vacate or modify the award. The awards in this case are dated December 14, 1998 and December 22, 1998.

*Mfg. Corp.,* 148 F.Supp. 588 (S.D.N.Y. 1957)). "Forum shopping occurs when a litigant selects a forum only with a slight connection to the factual circumstances of his action, or where forum shopping alone motivated his choice." *Capitol Records, Inc. v. Optical Recording Corporation,* 810 F.Supp. 1350, 1353 (S.D.N.Y.1992). Petitioners have not demonstrated that Petrojam's filing was motivated solely or largely by forum shopping here.

 In addition to forum shopping, other "special circumstances" that warrant exception to the first-filed rule include the defendant's good faith attempts at settlement, judicial economy, the minimal difference in time between the filing of the two actions, and the lack of progress in either litigation. *See Columbia Pictures Industries, Inc. v. Schneider,* 435 F.Supp. 742 (S.D.N.Y.1977), *aff'd* 573 F.2d 1288 (2d Cir.1978); *Capitol Records,* 810 F.Supp. at 1354. While none of these factors militate strongly against transfer, taken together, judicial economy and the lack of progress in either litigation support the exercise of the Court's discretion in rejecting the first-filed rule. *See Capitol Records,* 810 F.Supp. at 1355; *see also Riviera Trading,* 944 F.Supp. at 1159; *River Road,* 871 F.Supp. at 214. It remains to analyze whether the convenience of the parties and witnesses, and the administration of justice, will be advanced by transfer to Florida.

Petitioners urge that the balance of convenience favors a New York forum. Petitioners rely on *Motion Picture Laboratory,* 804 F.2d at 18, for the proposition that the place where the arbitration was held is presumptively the convenient forum for settling the dispute.[4] *See also Matter of Arbitration Between U.S. Offshore, Inc.*

*and Seabulk Offshore, Ltd.,* 753 F.Supp. 86, 89 (S.D.N.Y.1990); *Alexander Ins. Ltd.,* 1991 WL 150224 at *2; *Fahnestock & Co. v. Waltman,* 1990 WL 124354 at *6 (S.D.N.Y. Aug.23, 1990), *aff'd,* 935 F.2d 512 (2d Cir.1991). *Motion Picture Laboratory* is distinguishable from the instant case. In *Motion Picture Laboratory,* the Second Circuit held that the arbitrator's award was "made" in Florida for the purposes of determining proper venue where the arbitrator's decision had been signed, sealed, and mailed from New York, but the site of the dispute was in the Middle District of Florida, the parties operated out of Florida, the arbitrator's hearings had been held in Florida, and the repercussions of the arbitrator's decision would be felt exclusively in Florida. In light of its earlier holding that section 9 of the FAA should be read as permissive, the court stated that its finding that venue was proper in the Middle District of Florida did "not necessarily compel" the conclusion that venue was improper in the Southern District of New York. 804 F.2d at 18. However, given that an "essentially identical" action had been filed first in Florida, the court applied the "well-settled first filed rule" and ordered the dismissal of the New York action in favor of the Florida action. *Id.* at 19.

The *Motion Picture* court found that the balance of convenience weighed "overwhelmingly" in favor of Florida as the parties had "absolutely no ties to the Southern District of New York." *Id.* In the present action, neither New York nor Florida have any connection with the underlying Agreements upon which the awards at issue are based. Neither Petitioners nor Petrojam have strong ties to the Southern District of New York—all

---

4. Petitioners also cite the recent decision by the Honorable Lawrence M. McKenna in *Prozina Shipping Company, Ltd., v. Elizabeth–Newark Shipping Inc.,* 1999 WL 203356 (S.D.N.Y. April 12, 1999), for the proposition that the proper venue to vacate an arbitration award is the place where the award was made. While Judge McKenna, did hold that

venue was "proper" pursuant to the express terms of section 9 of the FAA, he explicitly noted that the Second Circuit has applied a permissive construction to section 9. Thus, while an action to confirm or vacate may be brought in the district in which the award was made, it is not required.

parties are non-New York corporations with their principal places of business outside the State of New York. Moreover, this Court has not heretofore assumed jurisdiction over nor otherwise had any connection with this matter.

While the parties have, by agreeing to arbitrate here, "already indicated that [the Southern District of New York] is mutually convenient to settle their dispute," *id.* (*quoting Central Valley Typographical Union, No. 46 v. McClatchy Newspapers*, 762 F.2d 741, 744 (9th Cir.1985)) it does not appear that New York is, in fact, more convenient than Florida. Arguably, the two fora are equally convenient. It is however, Petrojam's burden to demonstrate that the balance of convenience *favors* Florida. Moreover, in light of Judge Moreno's decision to stay the litigation in Florida, trial efficiency and the interest of justice dictate that this action should remain in New York.

Accordingly, Petrojam's motion to transfer is denied.

## II. *The Arbitration Awards Will Be Confirmed*

The FAA provides that a court "must grant ... an order [confirming an arbitration award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9; *see Ottley v. Schwartzberg*, 819 F.2d 373, 375 (2d Cir.1987).

 The grounds for vacating are narrow. Indeed, courts have consistently held that " 'arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.' " *Dirussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir.1997) (citation omitted). Moreover, the burden is on the party seeking to vacate the award to establish one of the statutory grounds for relief. *See Willemijn Houdstermaatschappij, BV v. Standard Microsystems*

*Corp.*, 103 F.3d 9, 12 (2d Cir.1997). Thus, the Second Circuit "adhere[s] firmly to the proposition [ ] ... that an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a 'barely colorable justification for the outcome reached.' " *Landy Michaels Realty Corp. v. Local 32B–32J*, 954 F.2d 794, 797 (2d Cir.1992) (citation omitted).

Under Section 10 of the FAA, 9 U.S.C. § 10, there are four possible grounds for vacating an arbitration award:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone a hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators so exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made....

9 U.S.C. § 10(a).

Petitioners contend that the arbitrators engaged in misconduct and exceeded their powers in violation of 9 U.S.C. §§ 10(a)(3) and 10(a)(4) of the FAA. Alternatively, Petitioners allege that the arbitrators made evident material miscalculations that warrant modification of the awards. These contentions will be addressed *seriatim.*

### 1. *Arbitrator Misconduct*

 Petitioners assert that the arbitrators were required to conduct oral hearings and that their failure to do so constituted "misconduct" under 9 U.S.C. § 10(a)(3). While hearings are advisable in most arbitration proceedings, arbitrators are not compelled to conduct oral hearings in every case. *See Matter of the*

*Arbitration Between InterCarbon Bermuda*, 146 F.R.D. 64 (S.D.N.Y.1993). As long as an arbitrator's choice to render a decision based solely on documentary evidence is reasonable, and does not render the proceeding "fundamentally unfair," the arbitrator is acting within the liberal sphere of permissible discretion.

In *InterCarbon*, the Honorable Mary Johnson Lowe reviewed a 9 U.S.C. § 10(a)(3) "arbitrator misconduct" challenge to an arbitration award. As in the instant case, the challenge was based upon the fact that "the arbitrator decided certain contractual issues without hearing live testimony ..." 147 F.R.D. at 72. Specifically, Intercarbon claimed that the parties orally expressed an intent inconsistent with written contractual terms, and wished to present witnesses to the arbitrator to testify to that effect. Judge Lowe determined that the record supported Intercarbon's claim that it made "repeated pleas" for oral hearings which the arbitrator apparently ignored, but nevertheless upheld the award. *Id.* Analogizing to the procedure for summary judgment under Fed. R.Civ.P. 56, Judge Lowe held that the arbitrator's decision to render a determination based on written submissions alone was reasonable. In its briefs, Intercarbon submitted affidavits of proposed witnesses that were cursory and ambiguous, and at most created "potential factual issues." *Id.* at 73. As Intercarbon could have presented credible evidence of a compelling factual dispute in its briefs but failed to do so, Judge Lowe concluded that "hearings will not be required just to see whether real issues surface." *Id.* at 74.

Petitioners attempt to distinguish *Inter-Carbon* on the grounds that the parties in *InterCarbon* were given notice by the arbitrators that no hearings were required. Petitioners claim that in the instant case "the lack of notice and secret closure of the proceedings denied Petitioners the right to be heard ..." (Petitioners' Reply Brief at 4). However, Petitioners were given notice that a decision by the arbitra-

tors based solely on the papers submitted by the parties was a distinct possibility. Petrojam's proposed procedures included a provision that made oral hearings expendable at the option of the parties or the arbitrators. Moreover, in light of the record, and in particular the admonition to Petitioners by the arbitrators on April 10, 1998 that they were "prepared to act on the information received to date," Petitioners claims of lack of notice and "secret" proceedings is not credible.

■ Petitioners cite *Cofinco, Inc. v. Bakrie & Bros., N.v.*, 395 F.Supp. 613 (S.D.N.Y.1975), for the proposition that arbitral awards must be vacated where a party is deprived of an opportunity to receive a full and fair hearing on the merits. In *Cofinco*, however, the party challenging the arbitration award was completely denied the opportunity to present any evidence, oral or written, regarding the merits of his defense to a claim. As the Court stated, "[t]he appeals panel made a final ruling on questions that had been expressly postponed below, where it had been recognized ... that the basic right to present and test evidence on issues of fact that had not been accorded. There was never occasion to hear this evidence in the first instance." 395 F.Supp. at 615. Accordingly, the case fell within the "minuscule proportion of awards vulnerable in court." *Id.* In the instant case, the decision of the arbitrators was based on the documents and written submissions of the parties, including Petitioners' twenty-eight page, fifteen exhibit brief. The lack of oral hearings does not amount to the "denial of fundamental fairness" required to warrant vacating the award. *Transit Cas. Co. v. Trenwick Reins. Co.*, 659 F.Supp. 1346, 1354 (S.D.N.Y.1987), *aff'd*, 841 F.2d 1117 (2d Cir.1988).

### 2. *Imperfect Execution of Powers*

A failure by the arbitrators to abide by the applicable rules constitutes a violation of 9 U.S.C. § 10(a)(4). *See* 29 Moore's Federal § 709.32[3][e] at 709–759 (3d ed.).

In the present action, the Arbitration Clause does not specify the rules to be followed in the arbitration proceeding, and the parties disagree as to which rules are applicable. Petitioners claim that the relevant procedures are the formal rules specified by the Maritime Arbitration Rules of the SMA which provide for oral hearings unless the parties agree in writing to forego hearings, and which provide that "[o]nce all submissions are completed, the Chairman shall declare the proceedings closed." Petrojam counters that it did not agree to abide by the entire body of SMA rules, and that the relevant procedures were those proposed by Petrojam and adopted by the arbitrators.

 Petitioners have failed to meet their burden of establishing that the parties agreed to incorporate the body of the SMA rules. There are no documents in the record, either drafted by the parties or the arbitrators, that refer to or cite specific SMA rules. Moreover, courts reviewing an arbitration award must construe all doubts in favor of upholding the award. *See* 29 Moore's Federal § 709.32[3][e] at 709–759. Accordingly, Petitioners' 10(a)(4) motion is denied.

### A. *Evident Material Miscalculation*

Petitioners contend that in the event that the arbitration awards are not vacated, they must be modified to "eliminate material miscalculations." (Petitioner's Brief at 19). Specifically, Petitioners urge that the arbitration award dated December 14, 1998 should be modified to show a total due Petrojam from Griffin in the amount of $7,762.29, and the arbitration award dated December 22, 1998 should be modified to show a total due to Petrojam from OCL in the amount of $62,917.34.

A party challenging an arbitration award must show that no proper basis for the award can be inferred from the facts of the case. *See Wall Street Associates L/P v. Becker Paribas, Inc.,* 27 F.3d 845 (2d Cir.1994). In the instant case, Petitioners' allegations of miscalculation cannot be determined from the factual record. Rather, the Court must essentially re-decide the merits of the case by analyzing the arbitrators decisions and the documents and briefs of the parties. Such a *de novo* review, however, is inappropriate. *See* 29 Moore's Federal § 709.32[3][e] at 709–759 (award must be confirmed if the intent of the panel is apparent or can be inferred from the facts of the case; the court will not conduct a *de novo* review).

### *Conclusion*

For the reasons stated above, Petrojam's motion to transfer is denied, Petitioners' motion to vacate or modify the arbitration awards is denied, and Petrojam's motion to confirm the arbitration awards is granted.

It is so ordered.