21 F.3d 139
 62 USLW 2626, Fed. Sec. L. Rep. P 98,146
 In re VMS SECURITIES LITIGATION.
Elmer R. HUBBARD and Lois D. Hubbard, Appellants/Cross-Appellees,
v.
PRUDENTIAL SECURITIES INCORPORATED, Appellees/Cross-Appellants.
 Nos. 92-1666, 92-1795.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Dec. 2, 1993*.
Decided March 30, 1994.
 
 Elmer R. Hubbard and Lois D. Hubbard, Mahler & Associates, pro se.
 David J. Bershad, Jerome Congress, Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, Marvin A. Miller, Patrick E. Cafferty, Miller, Faucher, Cherlow, Cafferty & Wexler, Chicago, IL, for plaintiff-appellee.
 Timothy A. Nelsen, Miriam Goldman Bahcall, Rawn H. Reinhard, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for defendant-appellee.
 Before LAY,** CUDAHY, and KANNE, Circuit Judges.
 KANNE, Circuit Judge.
 
 
 1
 In September 1988 Elmer and Lois Hubbard purchased interests in the VMS Mortgage Investment Fund through an account executive employed by Prudential Securities. They soon regretted their purchase.
 
 
 2
 Other Prudential customers were also dissatisfied. Between December 21, 1989 and March 16, 1990, twenty two class actions were filed in the Northern District of Illinois against Prudential Securities for the sale of various of the VMS Funds, including the VMS Mortgage Investment Fund which the Hubbards had bought.
 
 
 3
 On February 7, 1990, Judge Conlon consolidated these cases into one class action lawsuit. After the filing of several amended complaints, and extensive discovery and negotiation, the district court preliminarily approved a proposed settlement of all class and derivative claims, subject to notice to class members, a hearing, and final approval.
 
 
 4
 On February 22, 1991, the Hubbards filed a Statement of Claim with the Pacific Stock Exchange. They asserted claims against Prudential and one of its brokers arising from their September 1988 purchase of VMS Mortgage Investment Fund. The Hubbards alleged violation of NASD rules, federal securities laws, fraud and breach of fiduciary duty.
 
 
 5
 Notices of the proposed class action settlement were sent out beginning on October 3, 1991. The notice informed the class members that if the settlement were approved, the litigation would be dismissed with prejudice. It also stated that class members who failed to opt out by November 9, 1991 would be deemed to have released the defendants from every claim or potential claim, asserted in any court or other forum, in any way related to the sale of VMS securities which were the subject of the class action. The notice clearly and specifically instructed the class members that they would not be permitted to pursue individual claims against the defendants arising from any transaction in VMS securities unless they opted out of the class.
 
 
 6
 The Hubbards do not dispute that they received the notice before the opt out date. They did not opt out of the class.
 
 
 7
 On November 12, counsel for Prudential Securities advised the Hubbards that they were enjoined from continuing to arbitrate their claims. Prudential Securities advised the arbitration panel that as a result of the injunction it no longer had the authority to hear the Hubbard's claims. On November 19 the arbitration panel determined that it would, nevertheless, proceed to hear the Hubbards' claims.
 
 
 8
 Simultaneously, on November 19, the district court in Chicago entered its final judgment in the class action, which included the Hubbard's claims. The final judgment included a release of all asserted or potential class or individual claims relating to the purchase of VMS securities. The final judgment expressly enjoined all parties from asserting any released claim. Also, the district court expressly retained jurisdiction to enforce and implement the terms of the settlement.
 
 
 9
 Prudential immediately notified the arbitration panel that the Hubbards' claims had been terminated by the final judgment. Despite this notice, the arbitration panel proceeded to act on the Hubbards' claims against Prudential. On December 11, 1991, it awarded the Hubbards $125,000, of which $100,000 was attributed to the VMS mortgage investment fund.
 
 
 10
 On January 22, 1992, Prudential Securities moved the District Court for an order enforcing the final judgment against the Hubbards. Prudential asked the district court to enjoin the Hubbards from enforcing the arbitration panel's award, and to vacate the award because it was beyond the arbitrator's power to grant, following Sec. 10(d).
 
 
 11
 On February 20, 1992, after full briefing of the issues, the district court issued a Memorandum Opinion and Order. It found that (1) it had retained jurisdiction over the subject matter of the class action, (2) the Hubbards had released their claims against Prudential, and (3) the Hubbards were therefore enjoined from asserting their claims before the arbitration panel.
 
 
 12
 The district court also denied Prudential's request for vacation of the arbitration panel's award. It based this decision on this court's opinion in Commonwealth Edison Co. v. Gulf Oil Corp., 541 F.2d 1263 (7th Cir.1976), which the district court read as holding that the venue provision of 9 U.S.C. Sec. 9[1] was mandatory rather than permissive, and on its finding that there was no firm basis for concluding that Congress had intended venue under Sec. 10[2] to be permissive.
 
 
 13
 The Hubbards appealed the injunction which prevented them from enforcing the arbitration panel's award. Prudential cross-appealed, arguing that the district court erred when it concluded that venue was improper and it did not have jurisdiction to decide their motion to vacate the Hubbards' award.
 
 
 14
 We will examine the Hubbards' appeal first. They argue in essence that the district court lacked subject matter jurisdiction over the award the arbitration panel granted them because the claim was based solely on state law suitability claims. However this argument, whether or not it might be valid under another set of facts, is irrelevant here.
 
 
 15
 The Hubbard's did not opt of the class action against Prudential. The Hubbards were class members, and they are bound by the outcome of the class action. The class action final judgment contains broad claim release provisions. The Hubbards are bound by these provisions.
 
 
 16
 The final judgment in the class action specifically enjoins any members of the plaintiffs' class from asserting any of the released claims, "including such released claims as already may have been asserted in any pending action, arbitration, or other proceeding." (emphasis added). Under the settlement agreement all class members, including the Hubbards released all claims arising from the purchase of the VMS Mortgage Investment Fund, whether arising under "federal, state, or common law, or any other law, known or unknown, that has been, might have been, or might be asserted" in this litigation "in any court or forum whatsoever."
 
 
 17
 The Hubbards released their claims when they chose not to opt out of the class action. Furthermore, the language of the settlement agreement makes it clear that the district court retained jurisdiction to enforce and implement the terms of the settlement agreement.
 
 
 18
 The Hubbards' appeal fails. The district court's injunction against the Hubbards was proper. They may not enforce the portion of their arbitration award against Prudential which related to their investment in the VMS Mortgage Investment Fund.
 
 
 19
 We now turn to an examination of the district court's decision to deny Prudential's motion to vacate the arbitration award, which was the subject of Prudential's cross-appeal.
 
 
 20
 The district court, having enjoined the Hubbard's enforcement of the arbitration award, concluded that it could not take "the more definitive step of vacating the portion of the Hubbards' arbitration award based on the released M.I.F. investment claim." The district court reached this conclusion by accepting the Hubbards' argument, that venue did not lie with it.
 
 
 21
 The Hubbards' argument is based on a passage in 9 U.S.C. Sec. 10 which reads "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration." The Hubbards cited to various decisions to support their theory that, as the district court phrased it, "the venue provisions of Sec. 10 are mandatory and that an arbitration award therefore can be vacated only in the district in which the award was made."
 
 
 22
 In the district court, Prudential argued that 9 U.S.C. Sec. 10(d) allowed vacation of the award because the arbitrators "exceeded their power." Prudential further argued that the Illinois district court could decide this issue, because the venue provisions of Sec. 10 is permissive rather than mandatory. Prudential's venue argument hinged on the case of NII Metals Services, Inc. v. ICM Steel Corp., 514 F.Supp. 164 (N.D.Ill.1981).
 
 
 23
 The NII court discussed venue under Sec. 9, not Sec. 10. It found that Sec. 9 made venue permissive, and any district court which had jurisdiction could confirm an arbitration award pursuant to Sec. 9 even if it were not the district court in the place where the award was granted. The NII court observed that it required "some strain on the normal reading" of the statute to arrive at this conclusion, but that it would be "wasteful" for a court which already has jurisdiction to be required to dismiss an action and cause it to be resumed elsewhere. Prudential argues that the NII court's rationale should be extended to Sec. 10 as well.
 
 
 24
 A threshold question we must answer is whether or not Prudential is right when it argues that Secs. 9 and 10 should be treated similarly for venue purposes. The district court held that there was a "critical" difference in the language of the two provisions, and that while Sec. 9 could arguably be permissive, Sec. 10 cannot be.
 
 
 25
 We must disagree with the district court's conclusion on this point. On the issue of the uniformity of the venue provisions of Secs. 9 and 10 there is near unanimity of opinion to the contrary. See e.g. Sunshine Beauty Supplies, Inc. v. United States District Court for Central Dist. of Cal., 872 F.2d 310, 312 n. 4 (9th Cir.1989) (finding "no basis for creating" a difference between the venue provisions of Secs. 9 and 10, and that they are "essentially identical actions") Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc., 804 F.2d 16, 19 (2d Cir.1986) (Secs. 9 and 10 of the FAA are "essentially identical" actions).
 
 
 26
 The actions are identical, because Sec. 9 requires that an arbitration award be confirmed unless it is "vacated ... as prescribed in section[ ] 10...." In other words, the proceeding in which a party would seek to have its award confirmed under Sec. 9 is the same proceeding in which that party's opponent would seek to have the award vacated. That a court having venue for one section should also have venue for the other is nearly universally accepted, without regard to whether the court finds venue to be mandatory or permissive. So, while the district court is correct in noting that there is a difference between the wording of Sec. 9 and Sec. 10, it is not correct that this is "critical" with regard to whether or not venue is mandatory or permissive. Venue for the confirmation or vacation of an arbitration award is the same.
 
 
 27
 Having determined that the venue provisions of Secs. 9 and 10 are to be interpreted as identical, we now turn to the district court's decisions regarding whether or not Sec. 10 is permissive or mandatory. The district court rejected Prudential's argument for permissive venue under Sec. 10 on two bases: (1) its reading of the plain meaning of the statute, and (2) its reading of our opinion in Commonwealth Edison.
 
 
 28
 The district court's plain meaning analysis consisted of a careful reading of the relevant provision of Sec. 10. It noted that the word "may" in Sec. 10 "is employed as a modifier to the actions that a specific district court may take, rather than as a modifier to the identification of the appropriate court." The district court read the permissive word "may" in Sec. 10 as pertaining to which decisions the court can make, not which court has venue.
 
 
 29
 The district court also looked to our decision in Commonwealth Edison as binding precedent. It found that Commonwealth Edison "construed Sec. 9 as permitting actions only in the court agreed upon by the parties or, in the absence of an agreement, the federal court for the district within which the award was made." This conclusion is based on footnote 16 in Commonwealth Edison, which restates Sec. 9 as explicitly limiting venue in this manner.
 
 
 30
 Because the language of Sec. 10 suggests that venue is exclusive more strongly even than the language of Sec. 9 does, the Commonwealth Edison footnote interpreting Sec. 9 seems to close the door on the possibility of permissive venue in Sec. 10. And so the district court decided. But our review of Commonwealth Edison persuades us that footnote 16 does not rule out the possibility of permissive venue. Footnote 16 is not the result of any analysis in the opinion, nor is it essential to the resolution of the issues raised in the case. It is dicta. Therefore Commonwealth Edison is not precedential on this issue, and the question of permissive or mandatory venue is one of first impression.
 
 
 31
 As there is no binding precedent in our own circuit, we may look to decisions from other circuits for guidance. We find upon doing so that this issue has been widely examined. We find also that there is a sharp divergence of authority on this matter, with some courts finding venue to be mandatory under Secs. 9 and 10, while others find it to be permissive. In particular, there are three relevant appellate court decisions, in two different circuits, which reach opposite conclusions. See Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698 (2d Cir.1985) (Sec. 9 permissive); Sunshine Beauty Supplies, Inc. v. United States District Court for Central Dist. of Cal., 872 F.2d 310 (9th Cir.1989) (Sec. 9 mandatory); Central Valley Typographical Union No. 46 v. McClatchy Newspapers, 762 F.2d 741 (9th Cir.1985) (Sec. 10 mandatory); see also Alexander Ins. Ltd. v. Executive Life Ins. Co. of New York, 1991 WL 150224, 1991 U.S.Dist. LEXIS 10432 (S.D.N.Y.1991) (Secs. 9 and 10 permissive); Concourse Beauty Sch., Inc. v. Polakov, 685 F.Supp. 1311 (S.D.N.Y.1988) (Both Secs. 9 and 10 permissive); Amalgamated Clothing and Textile Workers Union v. Federation of Union Reps., 664 F.Supp. 995 (S.D.W.V.1987) (Secs. 9 and 10 permissive); Elgart v. Sono-Tek Corp., 1989 WL 136280, 1989 U.S.Dist. LEXIS 13519 (E.D.Penn.1989) (Sec. 9 permissive); Loleta B. Wing v. J.C. Bradford & Co., 678 F.Supp. 622 (N.D.Miss.1987) (Sec. 9 permissive); Motion Picture Lab. v. McGregor & Werner, 804 F.2d 16 (2d Cir.1986) (Sec. 9 permissive); Paul Allison, Inc. v. Minikin Storage of Omaha, Inc., 452 F.Supp. 573 (D.Neb.1978) (Sec. 9 permissive); but see Tesoro Petroleum Corp. v. Asamera (South Sumatra) Ltd., 798 F.Supp. 400 (W.D.Tex.1992) (Sec. 10 mandatory); Soo Line R.R. v. Chicago and Northwestern Transpt. Co., 737 F.Supp. 68 (D.Minn.1990) (Sec. 10 mandatory); Island Creek Coal Sales Co. v. City of Gainesville, Florida, 729 F.2d 1046 (6th Cir.1984) (Sec. 9 mandatory); City of Naples v. Prepakt Concrete Co., 490 F.2d 182 (5th Cir.1974) (Sec. 9 mandatory); United States ex rel. Chicago Bridge and Iron Co. v. Ets-Hokin Corp., 397 F.2d 935 (9th Cir.1968) (Sec. 10 mandatory); Enserch Int. Exploration v. Attock Oil Co., 656 F.Supp. 1162 (N.D.Tex.1987) (Secs. 9 and 10 mandatory); Arthur Imerman Undergarment Corp. v. Local 162, 145 F.Supp. 14 (D.N.J.1956) (Sec. 9 mandatory).
 
 
 32
 The line of cases which find venue to be permissive originate in the NII case, a district court opinion from this circuit. Citing to NII, the Second Circuit, in Smiga, found Sec. 9 to be permissive. These two decisions have been cited in subsequent cases finding venue to be permissive under Sec. 9.
 
 
 33
 The opposite view was set forth by the Ninth Circuit in Central Valley. There, the focus was on the wording of Sec. 9, specifically the phrase, "the United States court in and for the district wherein the award was made may make an order vacating the award." The Ninth Circuit, by limiting the focus of its analysis to this phrase concluded that venue was mandatory.
 
 
 34
 In United States v. Real Estate Known as 916 Douglas Ave., 903 F.2d 490, 492 (7th Cir.1990), we stated that "we will look beyond the express language of a statute only where (1) that statutory language is ambiguous or (2) where a literal interpretation would lead to an absurd result or (3) thwart the purpose of the overall statutory scheme." (numbers added). In this case, each of these three factors are present.
 
 
 35
 The ambiguity arises from the phrasing of the supposed restriction of venue in Secs. 9 and 10. Specifically, in other statutes which restrict venue with so-called "special venue provisions", Congress has usually employed more explicit language than that used in the FAA. The Smiga court noted that "[o]rdinary canons of statutory construction suggest that Congress would have used stronger language ... if the intention was to restrict the power of the federal court in Arbitration Act cases." Smiga, 766 F.2d at 707 (quoting Paul Allison, 452 F.Supp. at 574).
 
 
 36
 This theme is developed in Venue for Motions to Confirm or Vacate Arbitration Awards Under the Federal Arbitration Act, 57 Fordham L.Review 653 (1989). This Note examines the venue provisions of several federal statutes, and arrives at the same conclusion as the Smiga and Allison courts. Particularly valuable is its quotation from several statutes with "special," i.e. mandatory, venue provisions which are explicit in limiting venue,[3] and compares them to other statutes which explicitly allow permissive venue,[4] or have been found to allow permissive venue.[5] Id. at 658.
 
 
 37
 Placing these two sets of statutory provisions side by side, and comparing them with the language of Secs. 9 and 10, it is apparent that the FAA is not as explicit as the statutes which unequivocally restrict venue. This finding suggests that the plain meaning of the FAA does not necessarily make venue mandatory.
 
 
 38
 As we noted in Milwaukee Gun Club v. Schulz, 979 F.2d 1252, 1255 (7th Cir.1992), "in ascertaining the meaning of [a] statute, the court must look not only to the particular statutory language at issue, but to the language and design of the statute as a whole." See also Harco Holdings, Inc. v. United States, 977 F.2d 1027, 1031 (7th Cir.1992) ("context is important to explain the meaning of otherwise intelligible terms"). Following the guidance of Schulz, we must read the FAA in as a whole, in a way that reconciles all its provisions.
 
 
 39
 Examining the statute we find that mandatory venue would lead to two absurd results. First, as noted in NII, a mandatory reading of Sec. 9 would render Sec. 3 of the FAA[6] meaningless. NII, 514 F.Supp. at 166 (mandatory venue would read Sec. 3 out of the act). While not addressed in NII, a mandatory reading of Sec. 10 would have the same effect. See Smiga, 766 F.2d at 706 (citing to NII for this conclusion).
 
 
 40
 Another absurd result which arises if jurisdiction is mandatory is that a court with jurisdiction would be prevented from proceeding with the matter to its conclusion. The NII court noted that it would be "wasteful" and inconsistent "with principles of judicial economy" for a court which has jurisdiction of the parties to be required to dismiss the parties, and to compel one of them to sue in another forum to enforce its award under Sec. 9. In this case, identical reasoning leads to the conclusion that it is wasteful and uneconomical for the district court, which has jurisdiction of the parties, to dismiss them and compel one of them to sue in another forum to vacate an award under Sec. 10. See also Smiga, 766 F.2d at 706 (citing to NII for this conclusion).
 
 
 41
 By analogy, Moses H. Cone Memorial Hosp. v. Mercury Const., 460 U.S. 1, 27, 103 S.Ct. 927, 943, 74 L.Ed.2d 765 (1983) found that state courts, which had previously been found to be obliged to grant stays of litigation under Sec. 3 of FAA, also had jurisdiction to compel arbitration under Sec. 4 of the FAA. The Supreme Court so held despite the fact that Sec. 4 refers only to "United States district court[s]". It arrived at this conclusion because "[i]f the state court stayed litigation pending arbitration but declined to compel [arbitration], [the party seeking arbitration] would have no way to proceed with its claims except to return to federal court to obtain a Sec. 4 order--a pointless and wasteful burden on the supposedly summary and speedy procedures prescribed by the Arbitration Act." Id. (emphasis added).
 
 
 42
 A similar "pointless and wasteful burden" would be imposed if Prudential had to initiate a new action in a different court to vacate the Hubbard's arbitration award. In Cone the Supreme Court found jurisdiction to avoid reaching an almost identical absurd result. Herein, we find venue to do the same.
 
 
 43
 Finally, we note that a finding for the Hubbards would thwart the purposes of the FAA. The Supreme Court has described the "statutory policy" of the FAA as "rapid and unobstructed enforcement of arbitration agreements." Cone, 460 U.S. at 23, 103 S.Ct. at 941. Restricting venue without an unequivocal mandate to do so violates this policy.
 
 
 44
 We find for all these reasons that venue under Sec. 10 is permissive. Therefore, the district court could have and should have applied Sec. 10 and decided whether or not to vacate the Hubbard's arbitration award. The district court's judgment to the contrary must be vacated.
 
 
 45
 Prudential based their motion to vacate on Sec. 10(d), which allows vacation of an award when the arbitrators have "exceeded their power." As we noted above, the district court had retained jurisdiction for the purposes of enforcing the judgment in the class action, the Hubbards had been notified of the class and had not opted out of the class, and the arbitrators were notified of these facts.
 
 
 46
 The arbitrators "exceeded their power" when they decided to act on the Hubbards' claims. The Hubbards' claims against Prudential arising from their investment in the VMS Mortgage Investment Fund were subject to the class action settlement, and had already been resolved. There was nothing left for the arbitration panel to decide. To go ahead and "decide" the matter anyway was ill-advised and clearly beyond any power they had in this matter.
 
 
 47
 Prudential has satisfied the requirement of Sec. 10(d) of the FAA, and the arbitration panel award must be vacated.
 
 
 48
 The district court's grant of injunctive relief enjoining the Hubbard's arbitration award is AFFIRMED. The decision of the district court that it was without jurisdiction to vacate the arbitration panel's award because of the provision of Sec. 10 is VACATED. Venue properly lies in the northern district of Illinois and we REMAND to the district court with direction to vacate that part of the Hubbard's arbitration award which is covered by the class action settlement.
 
 
 
 *
 Submitted for decision without oral argument
 
 
 **
 Honorable Donald P. Lay, of the Eighth Circuit, is sitting by designation
 
 
 [1]
 "If the parties ... have agreed that a judgment of the court shall be entered upon [an] award made pursuant to [an] arbitration ... the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title [9 USCS Secs. 10, 11]. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made...."
 
 
 [2]
 "In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--
 ....
 (d) Where the arbitrators exceeded their powers...."
 
 
 [3]
 "Every suit instituted under this section shall be brought ... in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere...." Miller Act, 40 U.S.C. Sec. 270b(b) (1982). "Any action ... may be brought only in the judicial district in which such sources are located." Clean Air Act, 42 U.S.C. Sec. 7604(c)(1) (1982)
 
 
 [4]
 "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction...." 15 U.S.C. Sec. 1640(e) (1982). The party may sue "in any district in which the defendant resides or ... has an agent." Clayton Act, 15 U.S.C. Sec. 15(a) (1982)
 
 
 [5]
 "Any civil action for the collection of internal revenue taxes may be brought in the district where the liability for such tax accrues, in the district of the taxpayers residence, or in the district where the return was filed" 28 U.S.C. Sec. 1396
 
 
 [6]
 "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration ... the court in which such suit is pending ... shall ... stay the trial of the action until such arbitration has been had."