868 F.Supp. 1244 (1994)
The DENVER & RIO GRANDE WESTERN RAILROAD COMPANY, Plaintiff,
v.
UNION PACIFIC RAILROAD COMPANY, Defendant.
No. 93-1011-PFK.
United States District Court, D. Kansas.
November 4, 1994.
*1245 Phillip R. Fields, Wichita, KS, for plaintiff.
Michael D. O'Keefe and Kenton E. Knickmeyer, of Thompson & Mitchell, St. Louis, MO, Michael B. Buser, of Shook, Hardy & Bacon, Overland Park, KS, for defendant.

MEMORANDUM AND ORDER
PATRICK F. KELLY, Chief Judge.
This matter comes before the court on several motions. First, on July 19, 1994, plaintiff Denver & Rio Grande Western Railroad Company (DRGW) moved for an order lifting the stay of these proceedings. On July 27, 1994, defendant Union Pacific Railroad Company (UP) moved to dismiss. On August 19, 1994, pursuant to 9 U.S.C. § 10, DRGW moved to vacate an arbitration award made by arbitrator Gene Herod. On October 7, 1994, the court heard the parties' oral arguments and then adjourned to allow DRGW time to reply to UP's memorandum in opposition to DRGW's motion to vacate. The court has reviewed and considered the *1246 parties' arguments and is now ready to enter its decision.
According to UP, Missouri Pacific (MP) is a "sister corporation" of UP. Railroad track running between Pueblo, Colorado and Kansas City, Missouri is owned by MP. The track consists of a single main line track with side or passing tracks, located at various points to facilitate, inter alia, the movement of trains in both directions along the track. DRGW acquired the right to operate trains on this track via agreements executed by DRGW and MP in 1982. These agreements provide in part that MP or UP will provide train crews to operate DRGW's trains while they are on this track.
On March 28, 1991, one of DRGW's trains, denominated as FKCGJU-27, was westbound on the main line track. Another DRGW train, denominated as FGJNSM-26, was eastbound on the track. Both trains were being operated by UP train crews. At approximately 6:15 a.m., the westbound train entered the passing track at Cody, Kansas and stopped there, awaiting the eastbound train's arrival and passage on the main track. At approximately 7:15 a.m., as the eastbound train approached, the conductor of the parked westbound train, Leon Converse, threw the switch, thereby aligning the switch so that it directed the eastbound train into the passing track. This caused the two trains to collide head-on. The collision resulted in approximately $2.7 million dollars in property damage and personal injuries.
On January 11, 1993, DRGW filed this suit against UP stating jurisdiction is proper based on diversity of citizenship. 28 U.S.C. § 1332. DRGW alleges UP "is responsible in tort for the gross and/or wanton negligence of its employees, including but not limited to the conductor, under the doctrine of respondeat superior." (Complaint at ¶ 9.) DRGW also claims UP is responsible for all DRGW's damages "by reason of its breach of an implied warranty to supply [competent] workmen" and that UP's attempt to shift the responsibility of UP employees' negligent acts to DRGW violates "the public policy of the State of Kansas under the circumstances of this case." (Complaint at ¶¶ 11, 13.) In the alternative, and assuming a certain agreement between DRGW and MP was found to govern, DRGW alleges UP must pay DRGW for any losses in excess of $1,000,000.00.
On February 2, 1993, UP moved for a stay, asserting DRGW's claims were covered by a written agreement, and according to the agreement any disputes were to be resolved by arbitration. On March 23, 1993, this court granted UP's motion for stay. By joint letter dated July 9, 1993, the parties submitted the following issues to be arbitrated:
"1. Whether UP and/or MP is/are obligated to indemnify D & RGW against the expense of property damages and losses allegedly incurred as a result of the March 29, 1991, collision, and if so, what the amount of D & RGW's expense is; and
"2. Whether D & RGW is obligated (a) to defend and (b) to indemnify MP and/or UP against claims for personal injuries allegedly sustained as a result of the March 28, 1991 collision, including the claims of Junior L. Deutsch, now pending as Case No. 922-10684 in the Circuit Court of the City of St. Louis, Missouri, and Larry E. Adams, now pending as Case No. 92-2368-L in the United States District Court for the District of Kansas."
(Pltf.'s Memo. in Support of Motion to Vacate, Ex. A, Arbitrator's Report at 3 (quoting parties' joint request for arbitration).)
At the request of the arbitrator, Gene Herod, who resides in Tennessee, the parties agreed to hold an arbitration hearing in St. Louis, Missouri, on May 12, 1994. On July 13, 1994, Herod signed and mailed his arbitrator's report from Tennessee. At the hearing, DRGW argued an interim operating assistance term sheet (Term Sheet for MP/Rio Grande Agreement Covering Stipulated Interim Operating Assistance) controlled. Herod, however, determined it expired no later than October 24, 1988. Herod concluded that the governing agreement was the Term Sheet for Rio Grande Trackage Rights.
"The standard joint facility language regarding sole and joint employees and property, *1247 and third parties and their property, will govern liability matters."
(Id. at 8 (quoting Term Sheet, Art. IX).)
Applying standard liability provisions to the parties' agreement, Herod stated:
[T]he crews manning DRGW's trains should be regarded as DRGW "Sole Employees" since they were performing a service for the sole benefit of DRGW; i.e., moving DRGW's trains from one terminal to another.... The costs for all damages should be allocated to DRGW.... DRGW should bear all damages and indemnify and save harmless UP against such damages.... DRGW has the right to defend all suits for recovery of damages ... and the obligation to assume or join the defense of any suit for recovery of damages....
Gross negligence is not a factor in this matter because the applicable liability provisions or any standard joint facility liability provisions do not consider levels of negligence.
(Id. at 9.)
In answer to the two issues presented, Herod decided:
1. UP is not obligated to indemnify DRGW against the expense of property damages and losses allegedly incurred as a result of the March 28, 1991, collision.
2. DRGW is obligated to indemnity UP against claims for personal injuries sustained as a result of the March 28, 1991, collision. DRGW is obligated to defend or join the defense of the Deutsch or any other cases pending at the time of this decision.
(Id. at 10-11.)
On July 19, 1994, DRGW moved to lift this court's stay. In its motion, DRGW contends "[t]his action involves issues relating to public policy considerations," which are for the court to decide. DRGW further states: "It is necessary for this Court to now determine what judgment should be entered in these proceedings in light of the arbitrator's report filed herewith and to further resolve any and all public policy issues arising as a result of said arbitration." (Pltf.'s Motion for Order Lifting Stay at ¶¶ 3, 4.)
On July 22, 1994, UP filed an action in the United States District Court for the Eastern District of Missouri, Case No. 4:94CV1419, to enforce the arbitration award. Five days later, UP filed a motion to dismiss with this court, arguing that "[a]s a result of the arbitrator's award, there is no further controversy between the parties requiring decision by this Court." (Def.'s Motion to Dismiss at ¶ 4.) UP states that if either party wished to confirm, modify, vacate, or amend the arbitration award, "such order must be sought from the United States District Court in and for the district within which the award was made." (Id. at ¶ 5 (citing 9 U.S.C. §§ 9-11).)
Finally, on August 19, 1994, DRGW filed its motion to vacate the arbitration award, pursuant to 9 U.S.C. § 10. DRGW again argues public policy issues are to be resolved by the courts, and cannot be decided by arbitrators. DRGW moves for this court to vacate the arbitrator's report because it "violates the public policy against indemnification for gross negligence." (Pltf.'s Motion to Vacate at ¶ 10.)
First, the court must determine whether it has jurisdiction and is the proper venue for this action. Plaintiff moves for this court to lift its stay pending arbitration and to vacate the arbitration award. The parties' arguments center around the application of Section 9 of the Federal Arbitration Act (FAA), 9 U.S.C. § 9, which provides in part:
If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the *1248 United States court in and for the district within which such award was made.
(Emphasis added.)
Sections 10 and 11 of the FAA are also pertinent here. They state in part:
§ 10....
(a). In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration 
(1) Where the award was procured by corruption, fraud, or undue means.
(2) Where there was evident partiality or corruption in the arbitrators, or either of them.
(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.
....
§ 11....
In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration 
(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
(b) Where the arbitrators have awarded upon a matter submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.
(Emphasis added.)
DRGW argues the Tenth Circuit has not addressed this issue. In Oklahoma City Assoc. v. Wal-Mart Stores, Inc., 923 F.2d 791, 794 (10th Cir.1991), the court examined the provision within § 9 which states: "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration," and explained:
[T]he Supreme Court[, in Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n. 32 [103 S.Ct. 927, 941-42 n. 32, 74 L.Ed.2d 765] (1983),] held that the FAA requires an independent basis for subject matter jurisdiction, such as 28 U.S.C. § 1331 federal question or 28 U.S.C. § 1332 diversity of citizenship jurisdiction.
However the question of what kind of jurisdiction § 9 involves remains unsettled. Some courts have treated § 9 as addressing the venue of an action to confirm an award, implying it concerns personal jurisdiction which can be waived by the parties. Other courts have held § 9 is a second level subject matter prerequisite for confirmation of an award under the FAA in federal court.
The unambiguous language of § 9 leads us to believe that it creates its own level of subject matter jurisdiction for confirmation under the FAA. Section 9 conditions applicability of the FAA's summary confirmation process on whether "the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration." The clear import of this phrase is that there is no federal court jurisdiction to confirm under the FAA where such jurisdiction has not been made a part of the arbitration agreement.

*1249 We do not suggest, however, that a federal court would not have subject matter jurisdiction to decide this case outside of the FAA. The requirements of a § 1332 diversity suit are clearly met, for example, in the present case. As this court is postured, however, we are concerned only with subject matter jurisdiction under the FAA.
923 F.2d at 793-94 (emphasis in original, citations & footnote omitted.).
Ultimately, the court held "Section 9 requires some manifestation of the agreement to have judgment entered in the contract itself." 923 F.2d at 795. Because the parties' contract did not manifest such an agreement, the district court did not have jurisdiction to confirm the award under the FAA. In the suit before this court, DRGW and MP's applicable agreement, Term Sheet for Rio Grande Trackage Rights, states at Article X, "Rio Grande will agree to the standard arbitration clause." The parties do not dispute that a "standard arbitration clause" gives a federal court jurisdiction to enter judgment in accordance with 9 U.S.C. § 9. Instead, the parties question whether this federal court has the power to vacate the arbitration award, i.e., whether this court is the proper venue for determining DRGW's motion to vacate.
DRGW does not seek to confirm the arbitration award under § 9; instead, it seeks to vacate pursuant to § 10. Section 10 expressly provides that "the United States court in and for the district wherein the award was made" may vacate an award. The district wherein the award was made has been determined to be the district in which the arbitration hearing is held. See, e.g., Motion Picture Laboratory Technicians Local 780, I.A.T.S.E. v. McGregor & Werner, 804 F.2d 16, 18 (2d Cir.1986) (to achieve the congressional purpose of ensuring uniformity in arbitrations, court should adopt clear rule that venue lay where the arbitration is held); Central Valley Typographical Union No. 46 v. McClatchy Newspapers, 762 F.2d 741, 744 (9th Cir.1985) (primary reliance is on the location of the arbitration); City of Naples v. Prepakt Concrete Co., 490 F.2d 182, 184 (5th Cir.) (jurisdiction under FAA is determined by where the hearing is held), cert. denied, 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974). The rule that venue is proper where the arbitration is held "recognizes that the parties already have indicated that the location is mutually convenient to settle their dispute." Central Valley Typographical Union No. 46, 762 F.2d at 744.
Despite the difference in the language between § 9 and § 10, courts have held there is no distinction between venue for confirmation and vacation of an arbitration award. For example, in In Re VMS Securities Litigation, 21 F.3d 139, 142 (7th Cir.1994), the court noted that although the wording in §§ 9 and 10 is different, "the venue provisions of §§ 9 and 10 are to be interpreted as identical." The court further stated, "the proceeding in which a party would seek to have its award confirmed under § 9 is the same proceeding in which that party's opponent would seek to have the award vacated." Id.; see also Sunshine Beauty Supplies, Inc. v. United States District Court for the Central District of California, 872 F.2d 310, 312 (9th Cir.1989) (court found no distinction between the venue provisions of §§ 9 and 10).
Although courts may agree that the venue provisions of §§ 9 and 10 are identical in application, courts differ on whether those statutes' venue provisions are mandatory or permissive. The Ninth Circuit has held the venue provisions of §§ 9 and 10 to be mandatory, and therefore confirmation and vacation proceedings must be brought in the district wherein the arbitration was held. In Sunshine Beauty Supplies, Inc., the Ninth Circuit relied upon its earlier decision in Central Valley Typographical Union, No. 46, and stated, "This circuit has held that 9 U.S.C. § 10, which provides for an action to vacate an arbitration award analogous to the section 9 action to confirm the award, limits jurisdiction to vacate an award to the district where the award was made." 872 F.2d at 312 (footnote omitted). Because the court found no distinction between the application of § 9 and § 10, it concluded an action to confirm pursuant to § 9 also must be brought in the district where the award was made. Id.
In contrast, the Seventh Circuit, in In Re VMS Securities Litigation, found the venue *1250 provisions of §§ 9 and 10 are permissive. There, the court looked beyond the express statutory language for three reasons: (1) "`statutory language is ambiguous'", (2) "`a literal interpretation would lead to an absurd result'", and (3) applying the express statutory language would "`thwart the purpose of the overall statutory scheme.'" 21 F.3d at 144 (quoting United States v. Real Estate Known as 916 Douglas Ave., 903 F.2d 490, 492 (7th Cir.1990)). The court found §§ 9 and 10 to be ambiguous because Congress usually uses more explicit language for restricting venue in "special venue provisions." Id.
Furthermore, the court found reading the provisions as mandatory led to two absurd results. First, a mandatory reading of §§ 9 and 10 would render meaningless § 3 of the FAA, which allows a district court to stay proceeding while awaiting arbitration. The court also stated:
Another absurd result which arises if jurisdiction is mandatory is that a court with jurisdiction would be prevented from proceeding with the matter to its conclusion. The [court in NII Metals Services, Inc. v. ICM Steel Corp., 514 F.Supp. 164 (N.D.Ill.1981),] noted that it would be "wasteful" and inconsistent "with principles of judicial economy" for a court which has jurisdiction of the parties to be required to dismiss the parties, and to compel one of them to sue in another forum to enforce its award under § 9. In this case, identical reasoning leads to the conclusion that it is wasteful and uneconomical for the district court, which has jurisdiction of the parties, to dismiss them and compel one of them to sue in another forum to vacate an award under § 10.
21 F.3d at 145; see also Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698, 706 (2d Cir.1985) ("Once a federal court has subject matter jurisdiction over an action, it may confirm an arbitration award even though it was not the district where the award was granted."), cert. denied, 475 U.S. 1067, 106 S.Ct. 1381, 89 L.Ed.2d 607 (1986). Finally, the court noted that to find the venue provisions to be mandatory "would thwart the purposes of the FAA." 21 F.3d at 145 (citing Moses H. Cone Memorial Hosp. v. Mercury Const., 460 U.S. 1, 23, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) (Court "described the `statutory policy' of the FAA as `rapid and unobstructed enforcement of arbitration agreements.'")). Some courts have held that although §§ 9 and 10 are permissive, a court that was a proper venue, with subject matter jurisdiction, should transfer the matter to the district in which the award was made for the convenience of the parties, pursuant to 28 U.S.C. § 1404. See, e.g., J.V.B. Industries, Inc. v. Federated Dept. Stores, Inc., 684 F.Supp. 22, 23-24 (E.D.N.Y.1988) (court had subject matter jurisdiction to confirm award, but convenience and justice served by transferring to district in which arbitration took place, defendant had principal place of business, and location of material witnesses and documents).
This court agrees with the In Re VMS Securities Litigation and Smiga courts' conclusions that §§ 9 and 10 of the FAA should be read as permissive. Reading §§ 9 and 10 to require confirmation and vacation proceedings to be brought in the district where the arbitration was held leads to absurd results. The dispute before this court is a good example. This matter was filed with this court 18 months before the arbitrator issued his award. The underlying accident occurred in Kansas, the material witnesses are here, and both parties conduct business in the state. If the statutes are read to be mandatory, the parties' requests for confirmation and vacation of the award must be addressed by the District Court for the Eastern District of Missouri merely because, for the convenience of the arbitrator, the arbitration hearing was held in St. Louis. Furthermore, as DRGW points out, judicial economy is not served by requiring the parties now to take their dispute to another district.
UP argues that if §§ 9 and 10 are permissive and venue is proper with this court, the court should decline to exercise jurisdiction because UP filed its action before the District Court of the Eastern District of Missouri nearly a month before DRGW filed its motion to vacate the award. Thus, according to UP, the well-settled, first-filed *1251 rule weighs in its favor. See Motion Picture Laboratory Technicians Local, 780, I.A.T.S.E., 804 F.2d at 19 ("`[W]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second.'") (quoting Fort Howard Paper Co. v. William D. Witter, Inc., 787 F.2d 784, 790 (2d Cir.1986)). The court does not agree. First, this action was filed long before UP filed its action in the District Court of the Eastern District of Missouri. Second, even if the court looks to the motions filed by the parties in this court, DRGW moved to lift this court's stay and proceed to determine the issue of public policy three days before UP filed its action to confirm the award and eight days before UP moved to dismiss this action. Therefore, the first-filed rule supports DRGW's contention that this court should exercise jurisdiction and resolve the remaining issue of public policy. Accordingly, UP's motion to dismiss shall be denied and DRGW's motion to lift stay shall be granted.
The court now turns to DRGW's motion to vacate the arbitration award. DRGW argues the award should be vacated because it violates public policy, and requests a hearing in order to further argue the issue. The parties have briefed this issue and the court finds another hearing of legal arguments is unnecessary. Furthermore, as discussed infra, it is inappropriate for this court to hold an evidentiary hearing because the court is limited to the facts found by the arbitrator. It is, however, proper for this court to address the issue of whether the arbitration award violates public policy. In W.R. Grace & Co. v. Local 759, 461 U.S. 757, 759, 103 S.Ct. 2177, 2179-80, 76 L.Ed.2d 298 (1983), the Court addressed the issue of "whether the Court of Appeals was correct in enforcing an arbitral award of backpay damages against petitioner under the collective-bargaining agreement for layoffs pursuant to the conciliation agreement." The Court stated:
As with any contract, however, a court may not enforce a collective-bargaining agreement that is contrary to public policy. [The arbitrator's] view of his own jurisdiction precluded his consideration of this question, and, in any event, the question of public policy is ultimately one for resolution by the courts. If the contract as interpreted by [the arbitrator] violates some explicit public policy, we are obliged to refrain from enforcing it. Such a public policy, however, must be well defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests." Muschany v. United States, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945).
461 U.S. at 766, 103 S.Ct. at 2183-84 (citations omitted); see also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 43-44, 108 S.Ct. 364, 373-74, 98 L.Ed.2d 286 (1987) (citing W.R. Grace, Court reiterated rule requiring court to base decision to not enforce arbitration award, because it violates public policy, on existing laws and legal precedents).
DRGW contends the arbitration award cannot be enforced because doing so violates well established public policy against indemnification agreements for gross negligence. The State of Kansas, however, does not recognize degrees of negligence. Muhn v. Schell, 196 Kan. 713, 715, 413 P.2d 997 (1966), see also Holman v. Southwestern Bell Telephone Co., 358 F.Supp. 727, 728 n. 1 (D.Kan.1973) (Kansas does not recognize degrees of negligence, but a distinction remains "between mere or ordinary negligence and reckless, wanton, or willful misconduct").
Although the court must determine whether the arbitration award violates public policy, it must rely upon the arbitrator's facts. In Misco, the Court stated:
Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept....
....

*1252 ... The parties did not bargain for the facts to be found by a court, but by an arbitrator chosen by them....
484 U.S. at 37-38, 45, 108 S.Ct. at 370-71, 374. Here, the arbitrator found "the crews manning DRGW's trains should be regarded as DRGW `Sole Employees' since they were performing a service for the sole benefit of DRGW; i.e., moving DRGW's trains from one terminal to another." (Pltf.'s Memo. in Support of Motion to Vacate, Ex. A, Arbitrator's Report at 9.) The arbitrator also found, "Gross negligence is not a factor in this matter because the applicable liability provisions or any standard joint facility liability provisions do not consider levels of negligence." (Id.)
For support of its contention that the arbitration award violates Kansas public policy against limiting liability for gross negligence or wanton misconduct, DRGW cites Judge Lungstrum's decision in Butler Manufacturing Co. v. Americold Corp., No. 92-2118, 1993 WL 406730 (D.Kan. Sept. 20, 1993). In that case, numerous plaintiffs sought recovery of damages resulting from a fire in an underground warehouse facility owned and operated by defendants. Although plaintiffs' damage claims varied greatly, they were all subject to a form contract that contained a damage limitation provision. The court noted the parties' agreements were governed by Article 7 of the Uniform Commercial Code (UCC). One applicable UCC section provided in part: "`A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care.'" Id., slip op. at 8 (quoting K.S.A. § 84-7-204).
The damage limitation provision in the parties' agreement provided options for determining and limiting the defendants' liability, and further purported to "limit defendants' liability for damages to goods for which defendants are `legally liable.'" Id., slip op. at 10. The court concluded "the parties intended the phrase `legally liable' to include defendants' ordinary negligence." Id., slip op. at 11. The court held the contract's liability limitation was enforceable and acted to limit defendants' ordinary negligence. The court, however, found Kansas law prohibited the enforcement of contract provisions that limited liability if the damages resulted from gross negligence and willful or wanton misconduct. Id., slip op. at 17 (citing Western Union Tel. Co. v. Crall, 38 Kan. 679, 17 P. 309 (1888)). Thus, the court held the contract provision limiting liability was unenforceable if the damages resulted from gross negligence.
Here, relying upon the arbitrator's factual findings, the court finds the arbitration award does not violate public policy. The employees, although on UP's payroll, were operating DRGW's trains for DRGW's benefit. DRGW argues that the court must consider whether UP was supplying DRGW with properly trained and competent employees. UP and DRGW agreed that DRGW could use its own employees to operate DRGW trains on UP's track when their interim operating agreement expired. DRGW, however, continued to use UP employees. (Pltf.'s Memo. in Support of Motion to Vacate, Ex. A, Arbitrator's Report at 8.) DRGW raised this argument at the arbitration hearing and the arbitrator apparently rejected it. (See Id. at 9.) Thus, the court is faced with the question of whether employees operating DRGW trains for DRGW's benefit (or as the arbitrator termed them, DRGW's "Sole Employees") cause UP to be liable for their alleged negligence. Even assuming the train collision resulted from the conductor's gross negligence or willful and wanton misconduct, the answer to that question must be in the negative. Accordingly, the arbitration award does not violate public policy.
If an arbitration award cannot be vacated pursuant to 9 U.S.C. § 10, or modified pursuant to 9 U.S.C. § 11, it must be confirmed pursuant to 9 U.S.C. § 9. Smiga, 766 F.2d at 707-08 (if there is not sufficient evidence to justify vacation or modification under §§ 10 and 11, the court must confirm the arbitration award pursuant to § 9). The court has reviewed the criteria of §§ 10 and 11 and determined that Herod's arbitration *1253 award cannot be vacated or modified. Thus, the arbitration award shall be confirmed.
IT IS ACCORDINGLY ORDERED this 4th day of November, 1994, that plaintiff's motion for an order lifting stay entered March 23, 1992 (Dkt. No. 15) is granted.
IT IS FURTHER ORDERED that defendant's motion to dismiss (Dkt. No. 16) is denied.
IT IS FURTHER ORDERED that plaintiff's motion to vacate arbitration award (Dkt. No. 19) is denied.
IT IS FURTHER ORDERED that the arbitration award entered on July 13, 1994 is confirmed.